## FAON W. SCOTT V. SARAH JANE FLOWERS.

### FILED APRIL 10, 1901. No. 9,963.

1. **Repugnant Statute Must Yield to Constitution Only to Extent of Repugnancy.** Where there is a conflict between an act of the legislature and the constitution of the state, the statute must yield to the extent of the repugnancy, but no further.

2. **Unconstitutional Part of Statute: RESIDUE: INDUCEMENT.** If, after striking out the unconstitutional part of a statute, the residue is intelligible, complete and capable of execution, it will be upheld and enforced, except in cases where it is apparent that the rejected part was an inducement to the adoption of the remainder.

3. **State Industrial School: CHILDREN OVER SIXTEEN: CONVICTION OF CRIME: JURISDICTION OF COURT.** The legislature is without power to authorize the commitment to the state industrial school of children over the age of sixteen years who have not been convicted of crime; and the courts are without jurisdiction in such cases.

4. ————: **CHILDREN UNDER SIXTEEN: STATUTE: EXTENT OF VALIDITY.** Section 5, article 1, chapter 75, Compiled Statutes, 1899, is valid and enforceable to the extent that it authorizes commitment to the state industrial school of children under the age of sixteen years who, for want of proper parental care, are growing up in mendicancy or crime.

5. **County Court Always Court of Record.** The county court is always and under all circumstances a court of record. The county judge, in whatever official capacity he may act, is a judge of a court of record; he is not a justice of the peace even when exercising the ordinary powers and jurisdiction of a justice.

6. **County Court: FINAL JURISDICTION.** The county court has final jurisdiction of complaints filed under section 5 of the reform school law. Compiled Statutes, 1899, ch. 75, art. 1.

7. **Revisory Jurisdiction, Not Original.** The only jurisdiction conferred upon the county court, or the county judge, by section 6 *et seq.* of the reform school law (Compiled Statutes, 1899, ch. 75, art. 1), is a revisory and not an original jurisdiction.

8. **Former Decision Overruled.** The seventh point of the syllabus to *Scott v. Flowers*, 60 Nebr., 675, overruled.

9. **Former Decision Modified.** The opinion in *Scott v. Flowers, supra,* modified and the judgment reversed.

ERROR from the district court for Lancaster county. Tried below before CORNISH, J. *Judgment below reversed.* NORVAL, C. J., dissenting. Rehearing of case reported in 60 Nebr., 675.

*Wolfenbarger & Williams,* for plaintiff in error:

The complaint filed by Scott contains a sufficient charge of incorrigibility under section 6, article 1, chapter 75, Compiled Statutes of Nebraska.

1. Charging incorrigibility is not charging a crime, and the strict rules governing criminal complaints and prosecutions do not apply thereto in their fullness; furthermore, technicalities in a reform school case should give way to the prime consideration, *i. e.,* what is for the best interest of the infant. Hochheimer, Custody of Infants [3d ed.], pp. 104, 105, sec. 100.

2. The complaint filed by Scott is in the language of the statute. It is held that where a criminal statute is descriptive of the offense, a complaint charging in the language of the statute is sufficient. *State v. Lauver,* 26 Nebr., 757.

3. The only description we have of the offense termed "incorrigibility" is that contained in the statute itself in the section above noted. Incorrigibility is not referred to in any other chapter of the Compiled Statutes of Nebraska, so far as we know, and it was not an offense known to the common law.

4. The adjective "incorrigible" is defined thus: "That can not be corrected or amended. * * * Depraved beyond the possibility of reform; irreclaimable." "Incorrigibleness" (incorrigibility) is defined as "the state or quality of being incorrigible; hopeless error in things or depravity in people." Standard Dictionary. Incorrigibility, therefore, describes a *status. Scott v. Flowers,* 60 Nebr., 675. Incorrigibility is not a single act or several individual acts, but a *status* resulting from a multiplicity of prior acts, and it is, from the very nature of the offense, impossible to charge it otherwise than by directly alleging that the infant is "incorrigible."

*Halleck F. Rose* and *Wilmer B. Comstock, contra.*

*Halleck F. Rose:* The exercise of legislative power attempted with respect to the term of commitment is confined to a single provision. The term being excessive, the act is necessarily void. The objections raised involve the validity of the legislation itself rather than the proceedings had under it. It is imperative that the legislative act be so framed as to conform to the constitutional requirement, and this duty rests upon the legislature and can not be performed by the court. The court's highest duty is to preserve the fundamental law inviolate, and in performance of this task it should not be deterred by considerations of convenience, even though it be adjudged necessary to declare the entire act void. *Wynehamer v. People,* 13 N. Y., 378, 459.

SULLIVAN, J.

When this case was before us at the last term (*Scott v. Flowers,* 60 Nebr., 675) we decided that the plaintiff, Sarah Jane Flowers, was arrested and committed to the state industrial school at Geneva without any legal authority whatever, and that the judgment of the district court awarding her damages for false imprisonment should be, therefore, affirmed. This decision was rendered on the theory that section 5 of the act of 1887 (Session Laws, 1887, ch. 74), to the extent that it assumes to authorize the commitment of children of any age who are incorrigible, but who have not been convicted of crime, is unconstitutional and void. The correctness of this conclusion was promptly challenged by the learned counsel for the defendant. They now insist that the valid and invalid parts of the section are severable, and that the law should be upheld to the extent that it is in harmony with the constitution. Further investigation and reflection have convinced us that this view is reasonable, just, logically sound and well sustained by authority. The

general rule upon the subject is that where there is a conflict between an act of the legislature and the constitution of the state, the statute must yield to the extent of the repugnancy, but no further. *State v. Stuht*, 52 Nebr., 209; *Town of East Kingston v. Towle*, 48 N. H., 57; *Chicago, B. & Q. R. Co. v. Jones*, 149 Ill., 361; *McPherson v. Blacker*, 92 Mich., 377; *Grimes v. Eddy*, 126 Mo., 168; Cooley, Constitutional Limitations [6th ed.], pp. 210, 211; 23 Am. & Eng. Ency. Law [1st ed.], 225. If, after striking out the unconstitutional part of a statute, the residue is intelligible, complete, and capable of execution, it will be upheld and enforced, except, of course, in cases where it is apparent that the rejected part was an inducement to the adoption of the remainder. In other words, the legislative will is, within constitutional limits, the law of the land, and when expressed in accordance with established procedure, must be ascertained by the courts and made effective. In section 5 of the reform school law the legislature has given a clear expression of its will and purpose. It has in plain terms declared that all children under the age of eighteen years who shall be convicted in a court of record, of any crime, except murder or manslaughter, committed before the age of sixteen years, or who, for want of proper parental care, are growing up in mendicancy or vagrancy, or are incorrigible, may, in the discretion of the court, be sent to the state industrial school for education, reformation and safe-keeping. The legislature did not, as was shown in the former opinion, possess the power to authorize the commitment of children over the age of sixteen years who have not been convicted of crime, and consequently the courts are without jurisdiction in such cases. The legislature has here clearly expressed its will, but it has gone too far; it has transcended the limits of its authority. It has, in an unmistakable manner, signified its purpose not only to authorize the commitment to the reform school of certain children under the age of sixteen years, but, also, children beyond that age who, although guiltless of

crime, have evinced a criminal tendency and are without proper parental restraint. The legislature having declared its will, and its command to the courts being in part valid and in part void, the decisive question is, shall section 5 be given effect so far as it is in accord and agreement with the paramount law? It seems that both good sense and judicial authority require that the question should receive an affirmative answer.

In providing that certain children under the age of eighteen years should come under the control of the state as *parens patriæ*, the supreme purpose of the legislature was to give protection, education and nurture to every child who for want of proper parental care should be exposed to evil influences and growing up in mendicancy and crime. The intention was not so much to reach all children under the age of eighteen years as to reach all who might need, and be lawfully required to accept, the beneficence and bounty of the state. In view of the fact that sections 6, 7, 8 and 9 of the act of 1887 provide another and different procedure for the commitment of children under the age of sixteen years, there can be no ground whatever for claiming that section 5 would not have been enacted with the age limit fixed in accordance with the requirement of the constitution. The following cases may be cited in support of the doctrine that the grant of a specific power by the legislature is valid and effective so far as it is in harmony with the fundamental law and void only to the extent that it clashes therewith: *State v. Moore*, 37 Nebr., 13; *Dunn v. City of Great Falls*, 13 Mont., 58; *State v. Long*, 21 Mont., 26; *Clark v. Ellis*, 2 Blackf. [Ind.], 8; *State v. Towle*, 48 N. H., 97; *Tiernan v. Rinker*, 102 U. S., 123.

It has been suggested by counsel for defendant that the county court had jurisdiction of the complaint under section 6 of the act of 1887; and there is in the brief of counsel for the plaintiff an intimation that the court did not have jurisdiction under section 5, even if that section be sustained except as to the age limit. Our view of the

matter is that the county court has jurisdiction of complaints filed under section 5, but has no original jurisdiction whatever under section 6 and subsequent sections. The county court, notwithstanding some *dicta* to the contrary, is always and under all circumstances a court of record; and the county judge, in whatever official capacity he may act, is a judge of a court of record; he is never a justice of the peace, although he is invested with the ordinary powers and jurisdiction of a justice. Under the constitution and laws of this state the only courts of record having authority to try and determine criminal cases are the district courts and the county courts. If the jurisdiction given by section 5 was intended to be limited to the district courts it is extremely improbable that they would be described as courts of record, this being an expression which in its ordinary and legal acceptation includes county courts. But the intention of the legislature is distinctly revealed, and entirely freed from doubt, by section 10 of the act, which provides for a review of the proceedings had in the county court. This section also provides that the proceedings before the county judge may be brought to the district court for revision. There is, however, no provision for reviewing the proceedings before justices of the peace or other inferior courts. The conclusion to be deduced from section 10 is that the district court may review the proceedings resulting in an order of commitment made by the county court in the exercise of its original jurisdiction under section 5, and may also review the proceedings resulting in an order of commitment made by the county judge in the exercise of the revisory jurisdiction conferred upon him by sections 6, 7, 8 and 9. The county court having been invested with complete jurisdiction by section 5 of all the matters embraced in section 6, there can be no good reason for supposing that the legislature intended by the latter section to grant an authority which, in ampler measure, was given by the former. It is, of course, conceivable, but almost beyond belief, that the legislature,

44

having a definite object in view, should, in the adjust-
ment of means to ends, confer upon the county courts
complete authority over a certain class of cases and in
the very next section confer upon the same courts a lim-
ited authority over the same class of cases.  How could
the court ever know whether it was acting under one
section or the other?  The provision of section 6 to the
effect that the child named in the complaint, together
with the papers in the case, shall be sent under the con-
trol of an officer, to a judge of a court of record, indicates
with reasonable certainty that the legislature did not
have in contemplation a case arising in the county court
under that section.

In the seventh point of the syllabus to the former opin-
ion it is said: "Error can not be successfully predicated
upon the admission of testimony where the same line of
testimony has been received in the cause without objec-
tion."  This, we think, is stating the rule too broadly,
and the statement is now recalled and condemned.  The
point is not at all discussed by counsel, and as it has no
material bearing upon the decision, it will not be further
considered.

Having reached the conclusion that section 5 of the act
of 1887 is valid to the extent that it authorizes the com-
mitment to the reform school of children under the age
of sixteen years who are either incorrigible, or, for want
of proper parental care, growing up in mendicancy or
crime, it follows that the instructions of the trial court
can not be approved, and that its judgment must be re-
versed.  The judgment of affirmance heretofore rendered
by this court is set aside, and the judgment of the district
court is reversed and the cause remanded for further pro-
ceedings.

REVERSED AND REMANDED.

HOLCOMB, J., concurs.

NORVAL, C. J., dissenting.

I dissent, and will briefly state my reasons therefor.

We are all agreed that section 5 of the reform school law (Compiled Statutes, ch. 75, art. 1) is unconstitutional, so far as it authorizes the commitment to the state industrial school of persons over the age of sixteen years. I am unable to agree with my associates that the section is so far valid as that it may authorize the commitment to such school of children under the years stated who, for want of proper parental care, are growing up in mendicancy and crime. It is a familiar principle of law, which this court has frequently stated and applied, that when the valid and unconstitutional parts of a law may be capable of being separated, and the valid portion is a complete act and in no way dependent upon that which is void, the latter alone will be disregarded, and the remainder will, if the invalid part formed no inducement to the passage of the statute, be upheld. But if it is manifest, from an inspection of the law itself, that the invalid part in any way may have influenced the legislature to pass the act, the whole will go down together. *State v. Lancaster County*, 6 Nebr., 474; *State v. Lancaster County*, 17 Nebr., 85; *Trumble v. Trumble*, 37 Nebr., 340; *Low v. Rees Printing Co.*, 41 Nebr., 127; *State v. Moore*, 48 Nebr., 870; *German-American Fire Ins. Co. v. City of Minden*, 51 Nebr., 870; *State v. Bowen*, 54 Nebr., 211; *State v. Poynter*, 59 Nebr., 417; *Crawford Co. v. Hathaway*, 60 Nebr., 754.

Judge Cooley, in discussing this same subject in his valuable work on Constitutional Limitations [6th ed.], at page 210, uses the following language: "When, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it cannot be presumed the legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly dis-

tinct and separable, so that the first may stand though the last fall. The point is not whether they are contained in the same section; for the distribution into sections is purely artificial; but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. The difficulty is in determining whether the good and bad parts of the statute are capable of being separated within the meaning of this rule. If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail unless sufficient remains to effect the object without the aid of the invalid portion. And if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently, then if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them." And in a note on page 212 of the same work it is stated: "It must be obvious, in any case where part of an act is set aside as unconstitutional, that it is unsafe to indulge in the same extreme presumptions in support of the remainder that are allowable in support of a complete act when some cause of invalidity is suggested to the whole of it. In the latter case, we know the legislature designed the whole act to have effect, and we should sustain it if possible; in the former, we do not know that the legislature would have been willing that a part of the act should be sustained if the remainder were held void, and there is generally a presumption more or less strong to the contrary.

While, therefore, in one case the act should be sustained unless the invalidity is clear, in the other the whole should fall unless it is manifest the portion not opposed to the constitution can stand by itself, and that in the legislative intent it was not to be controlled or modified in its construction and effect by the part which was void." *State v. Stewart,* 52 Nebr., 243.

I am of the opinion that the age limit of eighteen years in section 5 of the reform school act is so interwoven and connected with the remainder of the section that if the age limit be stricken out or rejected, the section would be unenforceable.  Then it would read, "When a boy or girl of sane mind under the age of —— years, shall," etc. If it were permissible for the court to strike out of the section under consideration the word "eighteen" and insert in lieu thereof the word "sixteen," the age limit designated in section 12, article 8, of the constitution, then said section 5 would be valid.  But this we have no power to do.  That duty has been conferred upon another branch of the state government.  If the age limit of eighteen years in the section should be disregarded, the age limit in section 12, article 8, of the constitution could not supply its place.  That section of the fundamental law is not self-executing.  This is manifest from a mere inspection.  It reads, "The legislature may provide by law," thus indicating that the whole subject is committed to the legislature, except that it is inhibited from providing for the commitment of children to the industrial school over the age of sixteen years.  It could fix the age limit at ten years, or any other period less than sixteen years.  This, to my mind, conclusively shows that section 5 of the act in question can not be sustained with the age limit eliminated therefrom.  Moreover, the eighteen years limit may have influenced the legislature in adopting the section under consideration.  Indeed, such argument as may be drawn from the context favors that opinion, rather than the converse, as is argued by the writer of the majority opinion; for the very fact that

in one section the age is fixed at sixteen years (section 6), is strong evidence that, in enacting section 5 the legislature was unwilling that its provisions should apply to those only of sixteen years or under.

We have examined three of the principal cases cited in the opinion of the majority, one being *State v. Moore*, 37 Nebr., 13, wherein it was ruled that, when a general appropriation bill carrying an item of $15,000 for a specific purpose passed both houses, but before it reached the governor was changed to $25,000, and in that form was approved by him,, the bill appropriated $15,000. That case can hardly now be regarded as the law of this state, since the case of *Weis v. Ashley*, 59 Nebr., 494, the opinion being written by Mr. Justice Sullivan, wherein it was claimed that an act was wholly invalid where the title was changed after the bill passed the legislature and before the executive approved it. If the governor is part of the lawmaking body, as was ruled in that case, it would seem that he must approve the bill precisely as it passes the legislature, for any portion thereof to become a law.

In *Dunn v. City of Great Falls*, 13 Mont., 58, in the statute involved the legislature had provided that cities of a certain class may incur bonded indebtedness to an amount not exceeding four per cent of the assessed valuation, while the constitution provided for only three per cent, and it was held that the act was valid to the extent of the three per cent limited in the constitution. The case, however, is not well considered, and it cites no authorities in point, and was decided wrongly.

*State v. Long*, 52 Pac. Rep. [Mont.], 645, was one where a statute considered fixed the term of school trustees at three years, while the term of such office is limited by the constitution to two years. It was held, in a *per curiam* opinion, that the statute was valid to the limit of two years. We quote from the opinion the entire discussion of the subject: "We express no opinion upon the term of office of school trustee pursuant to the provis-

ion of the law under examination. At some future time that question may directly arise. We are satisfied, though, that, even if the term cannot run for three years, but does run for two years only, the whole law cannot be overthrown; but, as the part fixing the term is severable, the law will be .upheld as a valid statute providing for the election of trustees for the terms prescribed, not in conflict with the constitution." Not an authority is cited in support of the doctrine of that case. This court, in *State v. Stuht*, 52 Nebr., 209, held invalid the section of the charter of the city of Omaha which prescribed the term of office of police judge at three years, where the constitution fixed such term at two years.

The conclusion of the writer is that section 5 of the reform school law is invalid as an entirety, and that the whole section must fall.