HUNT v. WAYNE CIRCUIT JUDGES.

| 142 | 93 |
| f142 | 2121 |
| 142 | 93 |
| 151 | 1325 |
| 142 | 93 |
| 158 | 3.'5 |

1. INFANTS—WARDSHIP—CONTROL BY STATE.
    The State has power to define the status of infants requiring guardianship and to provide for their control and education. [1]

2. SAME — JUVENILE COURT ACT — CONSTITUTIONALITY — CIRCUIT COURT COMMISSIONERS.
    The juvenile court act of 1905 (Act No. 312) examined, and *held*, unconstitutional for attempting to extend the jurisdiction of circuit court commissioners of certain counties beyond the powers of a circuit judge at chambers, as limited by the Constitution (art. 6, § 16).

---

[1] As to State guardianship of children generally, see note to *Whalen* v. *Olmstead* (Conn.), 15 L. R. A. 593.

3. SAME—STATUTE—PARTIAL INVALIDITY.

> Since the act indicates an intention to provide for a uniform administration of the law it cannot be held inoperative merely in those counties where jurisdiction is attempted to be conferred on circuit court commissioners and operative in others.

Mandamus by Ormond F. Hunt, prosecuting attorney of Wayne county, to compel Flavius L. Brooke, Henry A. Mandell, Morse Rohnert, George S. Hosmer, and Joseph W. Donovan, circuit judges of Wayne county, to vacate an order denying a petition to establish a juvenile court under Act No. 312, Pub. Acts 1905. Submitted October 10, 1905. (Calendar No. 21,364.) Writ denied December 4, 1905.

Relator, the prosecuting attorney of Wayne county, applied by petition to the circuit court for that county and to the judges thereof, and in his petition set out that the legislature of the State of Michigan, at its last session, passed an act known as Act No. 312, entitled "An act to regulate the treatment and control of dependent, neglected and delinquent children, and to establish juvenile courts," which act went into effect September 18, 1905; that by the terms of the act the circuit court, in counties having over 100,000 population, is given original jurisdiction of all cases coming within the terms of the act; that Wayne county is a county having a population of more than 100,000; that in such counties a majority of the judges of the circuit court are by the terms of the act required to designate one or more of their members to hear cases coming under the act; that in the circuit court for the county of Wayne the judges thereof had not made such designation; that the police court of the city of Detroit, the justices of the peace of the county of Wayne, had ceased to exercise jurisdiction over dependent, neglected, and delinquent children, as defined by said act; and that, according to the information and belief of said petitioner, complaints against juvenile offenders were not to be entertained by

any of said officers within the county of Wayne. Petitioner prayed that the court and the judges thereof would, upon proper order, designate one or more of their members to hear cases coming under said act, would designate a court-room to be known as a " juvenile court-room " for the hearing of such cases, and provide for a record to be known as a "juvenile record." Thereafter, the matter of said petition coming on to be heard in said court before the judges thereof, it was held and found that the act in question is unconstitutional and void for certain reasons set out in the opinion of the majority of said judges, and the said petition was dismissed. At the same time there was pending in said court an application, made on the relation of John B. Whelan, the police commissioner of Detroit, for a mandamus to compel Christopher E. Stein, one of the police justices, to entertain a complaint against two male offenders, under the age of 16 years, charged with a felony under the general criminal laws of the State. The writ was granted.

Five of the judges of said court joined in making and filing the following opinion:

"This matter consists of two applications—one an application in the nature of a petition of the prosecuting attorney of the county requesting the court to designate one or more of its judges to act as judges of the juvenile court sought to be established by Act No. 312 of the Public Acts of 1905; and the other an application, on the relation of the police commissioner of the city of Detroit, for a mandamus to compel one of the police justices of the city of Detroit to entertain a complaint against two male juvenile offenders, under the age of 16 years, charged with a felony under the general criminal laws of the State. As it appeared that a determination of both of these applications depended upon the validity of said act, for convenience they have been heard together. It is claimed that for various reasons said act is unconstitutional, inoperative, and void. In entering upon the consideration of these objections we are mindful of the fact that the purposes sought by this juvenile court act are most humanitarian and beneficent, and that no greater or more important duty can devolve upon a community, its courts and

institutions, than the care, reclamation, and proper education of its neglected, dependent, and delinquent children. Nevertheless, the questions that are before us are strictly legal ones, and must be determined solely and strictly upon legal principles.

"1. The general purpose of the act in question seems to be to establish throughout the State (with the exception of seven counties named in the act) a uniform system for the treatment of dependent, neglected and delinquent children under certain ages. Juvenile courts are, by the act, established for the various counties of the State, and these courts are to be presided over by either circuit judges, circuit court commissioners, or judges of probate, according to the population of the various counties. The powers and jurisdiction of these various juvenile courts is the same, and each of these courts, whether presided over by a judge of a court of record or a circuit court commissioner, is given the same power in certain cases to punish for contempt. This seems to show that the purpose of the legislature was to establish a uniform system for the administration of the act. In our opinion, this purpose fails, for the reason that, in counties where the powers conferred by the act are to be administered by circuit court commissioners, the act confers upon such officers judicial powers and criminal jurisdiction beyond their powers under the Constitution, and the act is unconstitutional and void as to such counties. It seems to us that, where the act is rendered nugatory in a majority of the counties of the State, the whole scheme designed by the legislature fails, for it cannot be said that the legislature intended that if the act, which was designed for general application, could be sustained in counties of a population of upwards of 100,000, it should be enforced in such counties, even though it was rendered nugatory in all other counties.

"2. It is claimed that the act is unconstitutional in its application to this county for the reason that it is sought by the act to establish a new court to be designated the 'juvenile court,' and that the act merely designates the officer who is to preside over the court. The wording of section 3 of the act would seem to establish this claim, were it not for the wording of section 2, wherein it is provided that the circuit court shall have jurisdiction over all cases arising under the act. With regard to the intent of the legislature in this regard, the act is vague and uncertain. If it was intended to estab-

lish a new court, then the act is in contravention of article 6, § 1, of the Constitution. If the court sought to be established is a part of the circuit court, and a court of record, then the provision that trials shall be had by juries of six, when jury trials are had, is in contravention of article 6, § 27, of the Constitution.

" 3. We are of the opinion that that part of section 5 which provides for the arrest by warrant of the parent, guardian, or other person having the custody of any child described in the act, or with whom such child may be, is unconstitutional for the following reasons: *First.* This provision is not within the title of the act. *Second.* It is in contravention of article 6, § 26, of the Constitution, which provides that no warrant shall issue without probable cause. *Third.* It is not due process of law, within the meaning of article 6, § 32, of the Constitution.

" 4. There are other provisions of the act that are vague and not enforceable: The act provides for a fine in certain cases without limiting the amount of the fine. It provides that, when any child referred to in the act is adjudged to be ' willfully wayward and unmanageable,' such child may be sent to one of the industrial schools of the State, without designating or limiting the term of detention in such school. For the reasons above stated we think some of the provisions of the act are unconstitutional, and others so vague and contradictory as not to be enforceable, and we cannot say that the legislature intended the remaining provisions to be enforced standing by themselves. See *Mulhern* v. *Kent Circuit Judge,* 111 Mich. 528; *People* v. *Mangold,* 71 Mich. 335.

" It follows that the prayer of the petition of the prosecuting attorney must be denied, and that the mandamus will issue as prayed."

One of the judges of said court made and filed the following opinion:

" In this matter two petitions have been filed—one asking the circuit judges to appoint one or more of their number to hold juvenile courts under the provisions of Act No. 312 of the Public Acts of 1905; and another for a mandamus to compel the police justice to proceed with the trial of two boys, under the age of 16 and over the age of 12, on a charge of burglary now pending before him. The only point presented to the court upon the argument

of these two matters is on the question as to whether Act No. 312 was or was not constitutional.

" The first point raised in regard to the constitutionality of the act was that under its provisions it established a new court, to be called a juvenile court, and that under the Constitution of this State the legislature had no such power. It was also claimed that, if such a court could be established, provision should have been made in the act for the election of a judge to preside over such court, and that in the act no such provision was made. I am of the opinion that this objection to the law is not well taken. I think that all the law does is to impose upon the circuit judges additional duties, and that stating that the court shall be called a juvenile court is of no material consequence, as long as the duties of a circuit judge require him, under the law, to conduct that court.

" It was also claimed that no provision was made in the law for officers of the court. I am of the opinion that no such provision was essential. The law already provides who shall be officers of the circuit court, and any decree, judgment, or order made by a circuit judge presiding over the juvenile court would be enforced the same as any order made by him when sitting as circuit judge in any other capacity, when there was no other provision made in the law for the enforcement of these orders.

" It was also claimed upon the argument that the law was unconstitutional for the reason that it provided that in counties having a certain number of inhabitants this juvenile court should be presided over by the circuit court commissioner, and that no power existed in the legislature to confer such duty upon the circuit court commissioner; it being greater than a judge at chambers could exercise. While this may be true, I do not see that it is pertinent to the question before the court, for there is no application here to have circuit court commissioners perform this duty, and I see no reason why the law may not be held to be constitutional in regard to imposing these duties upon a circuit judge, while it may be unconstitutional in imposing them upon a circuit court commissioner.

" It is also claimed that the law is unconstitutional in depriving a person of the right of trial by a jury composed of 12 men; this law providing that in certain contingencies a jury may be called, composed of six men. The evident object of this law is to give the circuit court the control of children within certain ages, and it also seems to

be its object to avoid, as far as possible, having these children charged with crime, and, in all cases where it is deemed proper by the presiding judge or other officers having the matter in charge, to seek to reform these children, rather than to convict them of crime, and thereby imperil their future. This is in no sense a criminal proceeding. It does not, in my opinion, rise even to the dignity of a quasi criminal proceeding. It is not a suit. It is simply an exercise of the power of the State over its youthful citizens for the purpose of looking after their good, bringing about a reformation, and leading them to follow a useful, instead of a criminal, life. In my opinion, this power exists in the State, and it may be exercised in such manner as the legislature shall direct, and it may be done either with or without the intervention of a jury; and if the orders and directions concerning these juvenile offenders are made by a court without a jury, or by a jury of six, it in no way, in my opinion, interferes with the constitutional right of a citizen to be tried for a criminal offense by a jury of 12 men. I think that this question has been passed upon in other States, from the authorities that have been cited here, and no case was cited and no good argument presented, in my opinion, why the law in this respect would be invalid.

"Another proposition was presented under a provision of this law. In section 1 of the act in question the words 'delinquent child' are defined as follows:

"'The words "delinquent child" shall include any boy under sixteen years of age, or girl under seventeen years of age, who violates any law of this State, or any city or village ordinance, or who is incorrigible, or who knowingly associates with thieves, vicious or immoral persons, or who is growing up in idleness or crime, or who knowingly visits or enters a house of ill repute, or who knowingly patronizes or frequents any policy shop or place where any gaming device is or shall be operated; or who patronizes or frequents any saloon or place where intoxicating liquors are sold, or who frequents or patronizes any public pool room or bucket shop, or who wanders about the streets in the night-time without being on any lawful business or occupation, or who habitually wanders about any railroad yards or tracks, or jumps or hooks onto any moving train, or enters any car or engine without lawful authority, or who habitually uses vile, obscene, vulgar, profane, or indecent language, or is guilty of immoral conduct in any public place or about any schoolhouse; every child who does not attend school and who is vicious, incorri-

gible or immoral in conduct while attending school, or who is an habitual truant from school, or who habitually wanders about the streets and public places during school hours without any lawful occupation or employment. Any child committing any of the acts herein mentioned shall be deemed a juvenile delinquent person, and shall be proceeded against as such in the manner hereinafter provided.'

"It was contended upon the argument that this law, defining, as above stated, who a delinquent child was, put it out of the power of the courts to deal with these children, provided they committed any crime. In other words, if it is a fact that a child who committed murder is just under the age of 16, or that such child committed rape, or robbery, or arson, he is the same as a boy who ran away from school or who wandered around the streets in the night-time, and that the language of this statute which says that delinquent children 'shall be proceeded against as such in the manner hereinafter provided' takes away from the courts the power to proceed against them in any other way, and that, too, for the reason that section 14 of this act says that 'all acts or parts of acts inconsistent herewith are repealed.' In other words, if this statute provides that delinquent children shall be punished in a certain manner, it repeals all laws prosecuting these children for other well-known criminal offenses. It seems to me that it is assuming a good deal to claim that all criminal laws of this State against boys under the age of 16 and girls under the age of 17 are repealed by this statute. In no place does this statute say that they shall not be proceeded against in any other way. In no place does it say, nor can it be implied, that the prosecution of criminals is inconsistent with the provisions of this act, and in all the cases cited, and in all the States where similar laws prevail, it never seems to have been decided that the law defining and taking care of delinquent children prevented the proper courts from proceeding against them when they had committed any criminal offense; and in a similar statute in the State of Illinois it is expressly provided that the law shall in no way interfere with the courts proceeding against delinquent children as criminals, when they have committed crime. The fact that this provision is made in the law of Illinois in no way affects the question as to whether the law would not have been the same if no such provision had been expressly made.

"Another objection made to the law is that it provides

no punishment for juvenile delinquents, and that there is no way of enforcing the law.    Section 5 of the act, among others, says:

"'If it shall appear to the court or commissioner that the public interests and the interests of such child will be best subserved thereby, he may make an order for the return of such child to his or her parents or guardians or friends, or upon conviction may impose a fine, or suspend sentence for a definite or an indefinite period, and may place such child while so on suspended sentence, under charge of the county agent on probation under the provisions of Act 91 of the Public Acts of 1903 as amended.'

"This provides for the care and custody of the child, including what is known as the 'probationary child;' and under the same section it provides:

"'At any time during the probationary term of a child released on probation as aforesaid, the court or commissioner by whom the child was so released, when presided over by its judge, at the time of the hearing, or his successor in office, may in its discretion revoke or terminate such probation.    If the child be found to be willfully wayward and unmanageable, the court or commissioner may cause him or her to be sent to the industrial school for boys at Lansing, or the industrial home for girls at Adrian, or to any State institution authorized by law to receive such boy or girl, subject to such conditions of sex and age as are provided by law for the reception of children in said school, home, or institution.'

"It seems to me that the object of the law is simply that in all such cases the court may put the child upon probation, and if, at any time during such probation, or even at the time of trial, the court shall think that the child is willfully wayward or unmanageable, he may send him, as other children are sent, to the industrial school for boys at Lansing, or, if the child be a girl, to the industrial home for girls at Adrian, to be taken care of as now provided by law.    It seems to me there is no uncertainty in this section, when properly examined, as to the power of the court to provide for punishment of such children as it may deem deserving of punishment under this law.

" As to the proposition that the legislature has the power to say that a person within certain ages cannot commit crime, it strikes me that there is very good reason for doubting the power of the legislature in this respect. Crimes of murder, rape, robbery, arson, burglary, and larceny are as old as the common law.    The power to act

and punish them is recognized in all civilized countries, and to say that under these conditions the legislature have power to arbitrarily say that persons within certain ages cannot commit these offenses seems to me to be extremely doubtful, and I have no question in my mind but what, if they have this power, it must be stated in such positive and unequivocal terms that their intention cannot be doubted. No such provision or statement has been made in this law, and no attempt has been made to state it. It might as well be argued with equal sense that a man who is charged with making a noise or rioting, or quarreling or fighting or making a disturbance, or frequenting gaming houses or houses of ill fame, and who is charged with disorderly conduct—with equal propriety it might be said that if, in the perpetration of this disorderly conduct, a murder or larceny or robbery is committed, he could not be punished for such offense, because the statute making these offenses disorderly conduct repeals the prosecution of these offenses by implication. It seems to me the idea is ridiculous.

"It has been contended that section 14 of this act, which provides that this act shall not apply to the counties of Berrien, Jackson, Houghton, Mecosta, Barry, Ottawa, and Manistee, makes the whole act unconstitutional, because it is class legislation in not applying to all the territorial limits of the State of Michigan, and that the legislature had no power to make it apply to a part of the State and not to the whole. The decision of the Supreme Court of this State, cited on the argument, seems to put this question at rest. It was there held that class legislation did not consist in the fact that a law only applied to a certain part of the territory of the State, but that it was class legislation when it failed to apply to all alike, within the territory designated in the law. I think this matter is too well settled by the decisions of the Supreme Court of this State to require further comment.

"When this matter was presented to the court, it occurred to me that we had under consideration one of the most important matters, if not the most important matter, that had ever been presented before me since I had been on the bench. It seems that this law is an effort on the part of well-meaning people to look after and care for the children of this country; that they have recognized the fact that the cities and villages of the land are full of uncared for and unprotected children. They have also

realized the fact that it is within these tender ages, before the child arrives at maturity, that the future character and conduct of the child is moulded; that no matter how well-bred a child may be, or how moral or intelligent the parents may be, if the proper care or direction is not thrown around the child within these years of infancy and youth, the character of the man or woman will be moulded for ill.   They have recognized the fact that in this age of graft, of the desire for wealth, of the desire for display, of the desire for pleasure, the care of the child is neglected, and that this neglect has a tendency to develop the worst characteristics of a person.   Seeing that numbers of the parents of the country are so careless of the welfare of their children, the strong arm of the government reaches out, as it ought to, to protect these children against themselves and against the criminal of their parents.   Children thus neglected grow willful, vicious, and depraved.   Before it is fully recognized the child has developed such criminal tendencies that the prospects of reform are remote, and in many cases impossible.   These facts being patent to all observing people, the power of the State is exercised for the purpose of remedying this evil, and taking away from the great army of criminals the daily recruits they are receiving from these neglected children, and all efforts in this direction should be encouraged; and while I am not in favor of undertaking to enforce a law that is unconstitutional, or to make a thing legal that is not legal, I do not believe that it is the duty of a court to be looking for reasons why such a beneficent law as this should be stricken from the statute.

"I have given as much attention as I can to the consideration of this matter, and I see no good or valid reason why this law should not be enforced.   Being of the opinion that the law is constitutional, I think an order should be entered that the circuit judges appoint one or more of their number to conduct this juvenile court.   Being of the opinion that the law in no way interferes with the right of police magistrates to prosecute boys under the age of 16 and girls under the age of 17 for violation of the criminal law, I, therefore, think that the mandamus ought to be issued as prayed for in the petition, directing the police magistrate to proceed against boys before him charged with burglary."

The prosecuting attorney applied to this court for a writ

of mandamus to compel the said circuit court for the county of Wayne, and the judges of said court, to enter the order prayed for.

The act in question is as follows:

" An act to regulate the treatment and control of dependent, neglected, and delinquent children and to establish juvenile courts.

" *The People of the State of Michigan enact:*

" Section 1. This act shall apply only to minors. For the purpose of this act the words ' dependent child ' and ' neglected child ' shall mean any child who for any reason is destitute or homeless or abandoned or dependent upon the public for support or who has not proper parental care or guardianship or who habitually begs or receives ·alms or who is found living in any house of ill fame or with any vicious or disreputable person or whose home by reason of neglect, cruelty or depravity, on the part of its parents, guardian, or other person in whose care it may be, is an unfit place for such child; any child under the age of ten years who is found begging, peddling, or selling any article, or singing or playing any musical instrument upon the street as a business, or giving any public entertainment or who accompanies or is used in the aid of any person so doing. The words ' delinquent child ' shall include any boy under sixteen years of age, or girl under seventeen years of age, who violates any law of this State or any city or village ordinance, or who is incorrigible, or who knowingly associates with thieves, vicious or immoral persons, or who is growing up in idleness or crime, or who knowingly visits or enters a house of ill repute, or who knowingly patronizes or frequents any policy shop or place where any gaming device is or shall be operated; or who patronizes or frequents any saloon or place where intoxicating liquors are sold, or who frequents or patronizes any public pool room or bucket shop, or who wanders about the streets in the night-time without being on any lawful business or occupation, or who habitually wanders about any railroad yard or tracks, or jumps or hooks on to any moving train, or enters any car or engine without lawful authority, or who habitually uses vile, obscene, vulgar, profane, or indecent language, or is guilty of immoral conduct in any public place or about any schoolhouse; every child who does not attend school and who is vicious, incorrigible, or immoral in conduct

while attending school, or who is an habitual truant from school, or who habitually wanders about the streets and public places during school hours without any lawful occupation or employment. Any child committing any of the acts herein mentioned shall be deemed a juvenile delinquent person and shall be proceeded against as such in the manner hereinafter provided. A disposition of any child under this act, or any evidence given in such cause, shall not in any civil, criminal, or other cause or proceeding whatever in any court, be lawful or proper evidence against such child for any purpose whatever excepting in subsequent cases against the same child under this act.

" SEC. 2. In counties in this State having over one hundred thousand population, the circuit court of the said counties shall have original jurisdiction in all cases coming within the terms of this act. In counties in this State having less than one hundred thousand population and more than twenty-five thousand population, the circuit court commissioner, or in case there are more than one circuit court commissioner, either of them shall have original jurisdiction in all cases coming within the terms of this act. In counties having twenty-five thousand population or less, the probate court shall have original jurisdiction in all cases coming within the terms of this act. In all trials under this act, any person interested therein may demand a jury of six, or the judge or commissioner of his own motion may order a jury of the same number to try the case. The jury so ordered shall be summoned and impaneled in accordance with the law relating to juries in courts held by justices of the peace.

" SEC. 3. In counties having over one hundred thousand population, a majority of the judges of the circuit court shall designate one or more of their members whose duty it shall be to hear all cases coming under this act. A court-room to be designated as a ' Juvenile Court Room ' shall be provided for the hearing of such cases, and the findings of the court shall be entered in a book or books to be kept for that purpose and known as the 'Juvenile Record;' and these courts shall be called the 'Juvenile Courts.'

" SEC. 4. The governor may appoint in each county of this State an agent of the State board of corrections and charities, for the care and protection of ill-treated, dependent, and delinquent children, who shall hold his office during the pleasure of the governor and shall be known as

the 'County Agent' for the county for which he is appointed. Before entering upon the duties of his office and within thirty days after receiving notice of his appointment, the said agent shall take and file with the county clerk of the county for which he was appointed, the oath of office prescribed by the Constitution of this State; and upon such qualification, it shall be the duty of the county clerk to immediately transmit notice thereof to the judge of the juvenile court and circuit court commissioners and to the superintendents of all State and incorporated institutions authorized to receive or place out on contract, indenture, or adoption, any child. The said agent shall receive as compensation for his services under this act his necessary official expenses together with the sum of three dollars in full for each day ordered by the court, the superintendent of any State institution, or the State board of corrections and charities, but not exceeding three dollars for any one day's service; which shall be audited by the board of State auditors and paid from the general fund; and when such services and expenses relate to the indenture, adoption, or visiting of children placed in families by State institutions, the amounts therefor shall be certified by the superintendent of the institution to which the child may belong; and when such services shall be ordered by the court or commissioner the amounts therefor shall be certified by the court or commissioner so ordering such service. Such bills shall specify time spent, miles traveled, manner of travel, and each item of the expense incurred.

"SEC. 5. Any reputable citizen being a resident in the county having a knowledge of a child in his county who appears to be either neglected, dependent, or delinquent, may file with the court or commissioner having jurisdiction in the matter, a petition in writing, setting forth such fact or facts duly verified by affidavit, and it shall be sufficient that such affidavit shall be upon information and belief. Whenever such petition is filed, it shall be the duty of such court or commissioner, and before any further proceeding is had in the case, to give notice in writing of pendency to said agent, if there be one in said county, who shall have opportunity allowed him to investigate the facts and circumstances surrounding the case, and, upon receiving such notice, the agent shall immediately proceed to inquire into and make a full examination of the parentage and surroundings of the child and all

the facts and circumstances of the case, and report the same to the said court or commissioner who shall advise and counsel with the agent; and if, upon such consultation, and after full investigation, it shall appear to the court or commissioner that the public interest and the interest of the child will be best subserved thereby, a summons shall issue requiring the person or persons having custody or control of the child or with whom the child may be, to appear with the child at a place and time which shall be stated in the summons; and if such person is other than the parent or guardian of such child, then said parent or guardian shall be notified of the pendency of the case: *Provided*, That when said parents or guardians are nonresidents or cannot be found, then such notice shall not be required. If persons so summoned as herein provided shall fail without reasonable cause to appear with the child and abide the order of the court, he may be proceeded against for contempt of court under and in accordance with the provisions of chapters thirty-eight and three hundred one of the Compiled Laws of 1897. In case the summons cannot be served, or parties fail to obey the summons, and in any case when it shall appear to the court or commissioner that such summons will be ineffectual, upon complaint on oath and in writing, a warrant may issue either against the parent or guardian or other person having custody of the child or with whom the child may be or against the child itself and said child may be committed to the care of any person or association pending the final disposition of the case: *Provided*, That when a warrant is so issued, the prosecuting attorney of the county shall be notified and shall appear in the case for the people, if such appearance does not result in an undue delay in the disposition of the case. On return of the summons or warrant, or as soon thereafter as may be, the court or commissioner shall proceed to hear and dispose of the case, and if it shall appear to the court or commissioner that the public interests and the interests of such child will be best subserved thereby, he may make an order for the return of such child to his or her parents or guardians or friends; or upon conviction may impose a fine, or suspend sentence for a definite or an indefinite period, and may place such child while so on suspended sentence, under charge of the county agent on probation under the provisions of Act 91 of the Public Acts of 1903

as amended: *Provided*, The court or commissioner may in its discretion appoint one or more discreet persons of good character other than the county agent to act as probation officers and to have said child in charge. Such probation officers shall report to the State board of corrections and charities on all cases referred to them: *And provided further*, That the person so appointed other than the county agent shall receive no compensation from the public treasury for the duties performed under such appointment. The child may thus be placed for such time and upon such condition as the court or commissioner may determine, and such child so released shall be furnished with a written statement of the terms and conditions of their release. At any time during the probationary term of a child released on probation as aforesaid, the court or commissioner, by whom the child was so released, when presided over by its judge at the time of the hearing, or his successor in office, may, in its discretion, revoke or terminate such probation. If the child be found to be willfully wayward and unmanageable, the court or commissioner may cause him or her to be sent to the industrial school for boys at Lansing, or the industrial home for girls at Adrian, or to any State institution authorized by law to receive such boy or girl subject to such conditions of sex and age as are provided by law for the reception of children in said school, home, or institution, and in such case, the report of the county agent shall be attached to the mittimus and the child shall be placed in the charge of the county agent or some person designated by him to be conveyed under his direction to the institution, for which service the same fees shall be allowed as are paid sheriffs in like cases: *Provided*, That when a girl is to be conveyed to any institution a suitable female shall be such officer so conveying such girl.

"SEC. 6. When any boy under the age of sixteen years, or girl under the age of seventeen years, shall be found to be a dependent or neglected child, within the meaning of this act, the court or commissioner may make an order committing the child to the care of some suitable State institution, or to the care of some reputable citizen of good moral character, or to the care of some training school, or industrial school as such provided by law, to the care of some association willing to receive it, embracing in its objects the purpose of caring for or obtaining homes for

dependent or neglected children, which association shall have been approved by the State board of corrections and charities. The court, or commissioner may, when the health or condition of a child shall require, cause the child to be placed in a public hospital or an institution for treatment or special care, or in a private hospital or institution which will receive it for like purposes without charge.

"SEC. 7. No person shall commit a child under twelve years of age to any jail or police station, but it may be committed to the care and custody of the county agent or duly appointed probation officer who shall keep such child in some suitable place provided by the city or county outside of the enclosure of any jail or police station. When any child shall be confined in any institution, it shall be unlawful to confine such child in the same building with an adult or adults, or confine such child in the same yard or enclosure with an adult or adults, or to bring such child into any yard or building or in any conveyance in which an adult or adults charged with crime may be present.

"SEC. 8. In any case in which the court, or commissioner shall find a child neglected, dependent, or delinquent, it may in the same or subsequent proceedings, upon the parents of said child or either of them being duly summoned or voluntarily appearing, proceed to inquire into the ability of such parent or parents to support the child or contribute to its support, and if the court, or commissioner shall find such parent or parents able to support or contribute thereto, the court, or commissioner may enter such order or decree as shall be according to equity in the premises and may enforce the same by execution, or, in any way in which a court of equity may enforce its orders or decree.

"SEC. 9. The judge of the probate courts and the circuit court commissioners coming within this act shall receive for all cases tried by them under this act fees equal to those heretofore received by justices of the peace for such cases in addition to their regular salary, and shall have power to draw orders upon the general fund of the county treasury for witness and jury fees and also for compensation to guardians ad litem appointed by court.

"SEC. 10. All children shall be at all times in the care and custody of the county agent while under orders of the court. Whenever any inmate of any juvenile institution shall be required as a witness, they shall be conveyed to

and from the institution of which they are inmates by the county agent or under his orders and be at all times, while absent from said institution, in the care and custody of said agent: *Provided*, That when such inmate is a girl, such inmate shall be so conveyed by and shall be in the care and custody of a female duly authorized. The county agent may appoint some responsible and reliable person or persons subject to the approval of said court or commissioner to act as his deputy and the said agent shall be responsible for the acts of any deputy appointed by him. The agent shall receive for the care and custody of such dependent, neglected and delinquent children, under order of the court or commissioner, the same compensation and fees as is allowed sheriffs for like services and paid by the county treasurer on approval by the court or commissioner ordering such services, in like manner as juror and witness fees.

"SEC. 11. In no case shall any minor child be indentured, apprenticed, adopted, or otherwise disposed of by any person by either of the methods herein named or under any laws of the State, except on the written approval of the person or persons taking such child, by the county agent of the State board of corrections and charities of the county in which the person applying for the child resides or by a superintendent of the poor of the county where there is no such agent except by the father or mother residing in this State, and if either be dead or of legal incapacity, then by the guardian of the child, resident of this State and duly appointed under the laws thereof.

"SEC. 12. In and for the county of Wayne, there shall be an officer to be known as deputy county agent, who shall have all the rights, powers and privileges conferred by this act upon county agents, and who shall be empowered to perform any work or discharge any duty herein authorized or directed to be performed or discharged by any county agent. Said deputy county agent shall be a male resident of the city of Detroit, and shall be appointed by the county agent for Wayne county in the following manner: Within thirty days after this act shall go into effect, the said county agent shall appoint a suitable male resident of the city of Detroit as such deputy, subject to the approval, however, of the circuit judges, or a majority of them, of the third judicial circuit. Said circuit judges shall be notified in writing by said county agent to said appointment, and within fourteen days after the

receipt of said notification, shall in writing, by majority action, either approve or disapprove said appointment. In the event of disapproval the said county agent shall forthwith make a new appointment, subject to approval or disapproval in like manner as above provided, and shall continue to make an appointment until said approval be so made. Upon such written approval being so made, the county agent shall be notified thereof by the said circuit judges and due notice of such approval shall also be given by the said circuit judges to the person so appointed as deputy. Before entering upon the duties of his office as deputy, and within ten days after receiving notice of his appointment, the said deputy agent shall take and file with the county clerk of Wayne county the oath of office prescribed by the Constitution of this State. Upon such qualification it shall be the duty of the county clerk immediately to transmit notice thereof to the superintendents of all State and incorporated institutions authorized to receive or place out any child on contract, indenture or adoption. For any work done or expenses incurred by the said deputy county agent under the terms of this act, he shall receive the same compensation and the same fees, and they shall be paid him, in the same manner, as is herein provided for compensation and fees for county agents for like work done or expenses incurred. The said deputy county agent shall hold office at the pleasure of the county agent. Any vacancy in the office of said deputy county agent shall be filled in the manner herein provided for the appointment of the deputy to be first appointed under this act. The said deputy shall, whenever so required by the State board of corrections and charities, make a full report of his acts and conduct.

"SEC. 13. The attorney general shall prepare a uniform system of blanks which shall be furnished by the county to carry out the provisions of this act.

"SEC. 14. All acts or parts of acts inconsistent herewith are repealed: *Provided,* That nothing in this act shall be construed to repeal any portion of the acts covering the State public school: *Provided further,* That this act shall be of no effect as to any proceeding or proceedings pending at the time this act takes effect: *And provided further,* That the provisions of this act shall not apply to the counties of Berrien, Jackson, Houghton, Mecosta, Barry, Ottawa and Manistee. And as to those counties the present law is not repealed."

We have had the benefit of able briefs and of oral arguments, and among the contentions most strongly presented are:

1. That the act attempts to establish a separate, independent court of original and exclusive jurisdiction and a court of record.

2. That general judicial powers are attempted to be conferred upon circuit court commissioners.

3. That, if construed as creating a court of record, it is not competent for the legislature to provide for trial by a jury of six.

4. That the jurisdiction of the courts named in the act would not be uniform in all the counties of the State.

5. That section 5 of the act is not within the title of the act, and contravenes sections 26 and 32 of article 6 of the Constitution.

6. That the provisions of the act are vicious, inconsistent with each other, and cannot be given effect.

It is further contended that the act may be given effect at least in counties having a population of 100,000, in which counties the jurisdiction is conferred upon the circuit courts.

*Ormond F. Hunt*, in pro. per.

*Fred H. Warren*, for respondents.

*John E. Bird*, Attorney General, *Henry E. Chase*, Deputy Attorney General, and *Thomas Ambrose Lawler*, Assistant Attorney General, amici curiæ.

OSTRANDER, J. (*after stating the facts*). It will be perceived that the questions presented to this court in this matter do not arise upon an attempted enforcement of legislation. The record before us and the record in the matter of *Hooper* v. *McKenzie*, post, 120, evidence the fact that responsible officers of the State, gentlemen whose opinions are entitled to the greatest respect, decline to undertake, at all, the enforcement of this statute. The differences of opinion of these gentlemen, the range, scope, and specifications of the attack upon,

and the arguments and reasoning in support of, the legislation, indicate the importance of the questions presented. Legislation is rarely in advance of, most often follows at a conservative distance after, the community conviction of the desirability or necessity for legislation, and it may be assumed that the statute in question here is a reflection of sentiment amounting to a demand for legislation of such character. It is matter of common knowledge that legislation of similar character has been recently enacted in many of the States. Indeed, comparisons indicate that this statute is made up of fragments of other like statutes. The facts and even the vagaries of physiology and psychology, the age, sex, and mental and physical health of the individual members of the community, are factors in any system of jurisprudence. That the State should be, and is, profoundly interested in the moral and physical conditions of infant citizens, goes without saying. The law recognizes, as the physical and the social senses recognize, the requirements of nurture and of education, mental and moral. Infancy imports wardship. It implies control, direction, restraint, supervision. Depending, as it may and does, upon the natural and usual sentiments attending parentage and family, society is conscious, and has from earliest times been conscious, of the fact that conditions may be such that these dependencies are without support, and that the State itself must in some cases be parent to children of the State. From the earliest times the law, while regarding the natural rights of parents and deciding between estranged parents with equal natural rights, according to rules more or less certain, has always, in the last analysis of the particular case, set the welfare of the child, and the interest of the community in the welfare of the child, above every other consideration. In England the court of chancery, originally the keeper of the king's conscience in his paternal relations to all his subjects, has uniformly assumed to place the interest of the child above the natural rights of parents and the legal rights of guardians, and in this country the same courts

142 MICH.—8.

have exercised the same jurisdiction, basing such jurisdiction equally upon the inherent power of the court and upon statutory authority. See *In re Stittgen,* 110 Wis. 625. Including in its exercise the removal of the child from a bad to a better environment, and restraint corresponding with the necessity for restraint, it is not doubted, and has been rarely questioned, that this power may be exploited by the legislatures of the various States.

The legislature of this State has heretofore established a house of correction for juvenile offenders, the statute name for which is "The Industrial School for Boys" (1 Comp. Laws, §§ 2196–2207), and an "Industrial Home for Girls" (1 Comp. Laws, §§ 2209–2221), commitment to either of which involves conviction for an offense punishable by law, by fine or imprisonment or both, excepting, however, convictions punishable by law by imprisonment for life. There is, also, a "State Public School" at Coldwater (1 Comp. Laws, §§ 2021–2035) which may receive children over 2 and under 12 years of age, sound in mind and body, dependent on the public for support, and having no parents who can be compelled to support them or indemnify the public for support. Commitment to this school is upon the order of the probate judge of the proper county. The custody of children received at this school is intended to be temporary, and children are kept until they can be placed in family homes. The board of control is made guardian of all children admitted to the school, such guardianship to continue during the minority of the child. The House of the Good Shepherd, at Detroit, is made a place of legal detention of such girls as are convicted in the county of Wayne of an offense for which they might be sent to the home at Adrian. 1 Comp. Laws, § 2222. While criminal conduct, charged and determined according to the criminal code, or actual dependency upon the public for support, are by this legislation made the grounds and reasons for public interference, that interference is not limited, in point of time, by either a sentence as for crime committed, or the continuance of

the status of dependency. If the legislature may prop-
erly make State wardship contingent upon conviction
for crime or actual demands upon the public treasury, may
it not, also, otherwise define the status of infants requiring
guardianship, and enforce State control and education of
infants coming within the class? This question has been
many times, and must now be, answered affirmatively.
The questions from time to time presented in the cases
cited are determined, as one would suppose, sometimes in
support, and sometimes in defeat, of the particular legis-
lation which is considered. The tests applied are various;
constitutional limitations upon the exercise of legislative
powers and constitutional determination of the repose of
judicial powers not being the same in all of the States.
Putting aside for the present all questions concerning the
conclusive character and effect of proceedings employed to
determine the status of the child, either upon the parents
or the child, the power of the legislature to determine, by
rules and definitions, the class or classes of children re-
quiring it, and to impose State supervision, is no longer
open to question. *Jarrard* v. *State,* 116 Ind. 98; *Board
of Children's Guardians* v. *Shutter,* 139 Ind. 268 (31
L. R. A. 740); *State* v. *Kilvington,* 100 Tenn. 227 (41
L. R. A. 284); *Ex parte Nichols,* 110 Cal. 651; *Ex parte
Liddell,* 93 Cal. 633; *Farnham* v. *Pierce,* 141 Mass. 203;
*Matter of Wares,* 161 Mass. 70; *Matter of Kelley,* 152
Mass. 432; *State* v. *Brown,* 50 Minn. 353 (16 L. R. A.
691); *Matter of Ferrier,* 103 Ill. 367; *County of Mc-
Lean* v. *Humphreys,* 104 Ill. 378; *Ex parte Crouse,* 4
Whart. (Pa.) 9; *Milwaukee Industrial School* v. *Super-
visors of Milwaukee County,* 40 Wis. 328; *Wisconsin
Industrial School for Girls* v. *Clark County,* 103 Wis.
651; *Hibbard* v. *Bridges,* 76 Me. 324; *Mansfield's Case,*
22 Pa. Super. Ct. 224; *Cincinnati House of Refuge* v.
*Ryan,* 37 Ohio St. 197; *Prescott* v. *State,* 19 Ohio St. 184;
*Roth* v. *House of Refuge,* 31 Md. 329; *Ex parte Lov-
ing,* 178 Mo. 194; *People* v. *Catholic Protectory,* 101
N. Y. 195; *Com.* v. *Fisher,* 213 Pa. 48; *People, ex*

*rel. Ivis,* v. *Amigh* (Cir. Ct. Cook County, Ill.), 38 Chi. Leg. N. 20, Sept. 2, 1905; *State* v. *Home Society,* 10 N. Dak. 493; *Scott* v. *Flowers,* 60 Neb. 675, 61 Neb. 620.

From the point of view indicated, keeping in mind, also, the fact that infant citizens and their parents and guardians have rights which must be considered, it remains for us to examine the objections made to this statute, not disposed of by what has been already said. Legislation of like character in other States is so recent that in but few of them has the law received consideration in the courts of last resort. In none of them is it possible to urge, against the validity of the law, one objection which is strongly urged here. In all of the statutes which have been examined jurisdiction is vested in an established constitutional court, of more or less dignity. In the case of *Commonwealth* v. *Fisher,* 213 Pa. 48, the statute under consideration was the act of April 23, 1903 (Act No. 205, Laws of 1903), by the terms of which the court of quarter sessions of the peace was designated as a juvenile court. Appellant had been committed by that court to the House of Refuge. It was urged that the tribunal was an unconstitutional body and without jurisdiction. The act was entitled—

"An act defining the powers of the several courts of quarter sessions of the peace, within this commonwealth, with reference to the care, treatment and control of dependent, neglected, incorrigible and delinquent children, under the age of sixteen years, and providing for the means in which such power may be exercised."

It was said by the court that:

"The court of quarter sessions is not simply a criminal court. The constitution recognizes it, but says nothing as to its jurisdiction. Its existence antedates our colonial times and by the common law and statutes, both here and in England, it has for generations been a court of broad general police powers in no way connected with its criminal jurisdiction. * * * With its jurisdiction unrestricted by the constitution, it is for the legislature to declare what shall be exercised by it as a general police court,

and, instead of creating a distinctively new court, the act of 1903 does nothing more than confer additional powers upon the old court and clearly define them.    *    *    *    It is a mere convenient designation of the court of quarter sessions to call it, when caring for children, a juvenile court, but no such court, as an independent tribunal, is created.    It is still the court of quarter sessions before which the proceedings are conducted, and though that court, in so conducting them, is to be known as the juvenile court, the records are still those of the court of quarter sessions."

By the Constitution of Michigan, art. 6, § 1, the judicial power is vested in one Supreme Court, in circuit courts, in probate courts, and in justices of the peace. "Municipal courts of civil and criminal jurisdiction may be established by the legislature in cities." There is the further constitutional provision that "the legislature may provide by law for the election of one or more persons in each organized county, who may be vested with judicial powers not exceeding those of a judge of the circuit court at chambers." Const. of Mich. art. 6, § 16. Under the authority of this provision, the legislature has provided. for the election in each county of officers called "circuit court commissioners." If the act which we are considering were to be given effect, jurisdiction under it would vest, in two counties in circuit courts, in 44 counties in probate courts, and in 30 counties in circuit court commissioners. The constitutional jurisdiction of circuit courts is—

"Original jurisdiction in all matters civil and criminal not excepted in this Constitution and not prohibited by law, and appellate jurisdiction from all inferior courts and tribunals and a supervisory control of the same. They shall also have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, and other writs necessary to carry into effect their orders, judgments and decrees, and give them general control over inferior courts and tribunals within their respective jurisdictions, and in all such other cases and matters as the Supreme Court shall by rule prescribe." Const. of Mich. art. 6, § 8.

The probate courts have such jurisdiction, powers, and duties as shall be prescribed by law. The objection made is that the legislature may not confer upon circuit court commissioners the powers required by the act to be exercised, and that, this being so, the act must be held to be entirely invalid and inoperative. As to the first proposition, namely, that circuit court commissioners may not be vested with the powers of this act, there seems to be little or no contention. If it is held, as it may be, that the act should be construed as one not intending to create a new court or new courts, but as vesting further or new jurisdiction in existing courts, we escape serious objections leveled at the idea that the statute creates a new court; but in so holding we make no headway against the contention that the Constitution does not permit circuit court commissioners to be clothed with these new judicial powers. If we go further and hold that the proceedings contemplated are not criminal proceedings, but are special, statutory inquiries, that the right of trial by jury is not invaded, that the commitment provided for is not imprisonment, for all of which rulings support is to be found in cases already cited, we are still confronted with the alleged purpose of the legislation to establish juvenile courts, and to confer upon them powers beyond those which a circuit court commissioner may exercise. It was suggested at the hearing that, as the legislature had made definitions, the determination of a particular case involved only an inquiry into the surroundings and conduct of a child, and, as the determination required to be made in no case resulted in punishment, the proceedings were at most quasi judicial in character, and might be conducted as well by a circuit court commissioner as by a circuit court. It was further suggested that if it is found that the act in terms confers powers beyond those just stated, and beyond those which a circuit court commissioner may exercise, the provisions of the act open to objection should be disregarded, and the act for the general purpose intended be held to be operative.

It is clear that the act provides for tribunals in which.

the facts stated in the petition which is filed may be traversed, and in which the issues presented may be determined. It is clear that, when it is possible, the parents of the child are to be notified, and may appear and be heard. There are the provisions giving power to punish, as for contempt, contumacious parents, in accordance with the provisions of designated statutes, which in terms apply to courts of record only. The power to issue summonses and warrants, "or upon conviction" to impose a fine, to suspend sentence, to place the child upon probation and revoke and terminate such probation, to inquire into the ability of parents to support or to contribute to the support of children in the custody of the State and to enter and enforce decrees to that end—all of these provisions are indicative of the purpose to provide for, not only judicial, but court, proceedings. Satisfied of the legislative intent and purpose, can it be held that it may be disregarded, the provisions evidencing this intent eliminated, and the statute held to be for any purpose generally operative? It seems to me that every consideration forbids such a ruling. Unless the act can be held to be inoperative in counties where jurisdiction is given to circuit court commissioners, and operative, if other objections to the act are overruled, in counties where the jurisdiction is given to probate courts and to circuit courts, it is unnecessary to discuss further the questions presented. We are obliged to say that the language of the act indicates, not only the purpose to provide for a uniform administration of the law, but for its general application in all territory not expressly excepted from its operation. Judicial power does not extend to the mutilation or amendment of the act necessary to give it any effect in any county.

For the reasons given, the act must be held to be invalid. The order of the circuit court for Wayne county was right, and the writ of mandamus is denied. No costs are awarded.

MOORE, C. J., and McALVAY, GRANT, and BLAIR, JJ., concurred.