(Nos. 19465, 19466.—

THE PEOPLE, for use, etc., Appellee, *vs.* THE FEDERAL SURETY COMPANY, Appellant.

*Opinion filed October 19, 1929.*

McKenna & Harris, (Louis Gershon, James J. Mc-Kenna, and Abraham W. Brussell, of counsel,) for appellant.

Miller, Gorham & Wales, and Schnackenberg & Hansen, (Frederic O. Mason, and Herbert C. De-Young, of counsel,) for appellee.

Mr. Justice Dunn delivered the opinion of the court:

Gettelman & Co., Inc., an Illinois corporation, and the Federal Surety Company, an Iowa corporation, as surety for Gettelman & Co., filed with the Secretary of State on August 31, 1926, a bond in the sum of $15,000 in conformity with section 23 of the Illinois Securities law and conditioned as required by that section, in order to procure the registration, under the Securities law, of Gettelman & Co. as broker and dealer in securities for the period ending June 30, 1927. Two suits were brought on this bond in the municipal court of Chicago, in each of which a judgment was rendered for the plaintiff, from which the surety company appealed to this court on the ground that the question of the constitutionality of section 23 of the Illinois Securities law was involved. The questions in both cases are the same and they were argued and submitted together.

In No. 19465, which was brought in the name of the People for the use of J. G. Klemmer, the defendant moved to strike the plaintiff's statement of claim. The court de-

nied the motion, and upon the defendant's electing to stand by the motion a judgment by default was rendered in accordance with the affidavit of claim. In No. 19466, which was brought in the name of the People for the use of George A. Critchett, the defendant's affidavit of merits was stricken, and the defendant electing to stand by its affidavit, judgment was entered against it. In each case the affidavit of claim stated that Gettelman & Co. was required to execute and deliver to the Secretary of State, as a condition precedent to its registration, the bond which was set out at length; that the license of Gettelman & Co. as dealer and broker in the sale of securities was revoked by the Secretary of State on January 4, 1927, and that after that date Gettelman & Co. offered to sell, and did sell to the respective plaintiffs on January 29, 1927, and March 11, 1927, certain securities, in the sale of which it was at those dates illegal for it to act as dealer or broker; that the sale of such securities was illegal and voidable, and that Gettelman & Co., though repeatedly requested, had failed and refused to return the money paid to it on such sales.

Section 23 of the Illinois Securities law, as amended in 1925, declares that no person, owner, dealer and broker, or solicitor or agent, shall offer for sale or sell securities within this State unless registered with the Secretary of State as owner, dealer and broker or as solicitor or agent, provided that registration shall not be required of anyone when engaged solely in making sales specified as exempt in section 5 of the act. Any person, firm or partnership or corporation of good repute, upon entering into bond in the penal sum of $2000, payable to the People of the State of Illinois for the use and benefit of all persons interested, with terms, conditions and in forms to be approved by the Secretary of State and with a surety company satisfactory to the Secretary of State as surety, and on the payment of a fee of $25, and on such other reasonable conditions as may be imposed by the Secretary of State, may become a registered

owner, dealer and broker, and when duly registered may offer for sale and sell securities in classes A, C and D as prescribed in the act, provided that the Secretary of State, in his discretion, may in any case require a like bond in larger amount, but not in excess of the sum of $50,000, and that the Secretary of State, in his discretion, may permit a single bond for $50,000, with suitable conditions, to be filed to cover the requirements of this section 23 and also paragraph (*b*) of section 7 of the act.

The constitutional objection which the appellant has made in these cases is, that section 23 of the Illinois Securities law is an attempted delegation of legislative power to the Secretary of State and it is therefore void. All the legislative power of the State is vested in the General Assembly, and it may not divest itself of its proper functions or delegate its general legislative authority to the discretion of administrative officers so as to give to them the power to determine whether the law shall or shall not be enforced with reference to individuals in the same situation, without fixed rules or limitation for the exercise of such discretion. The legislature cannot delegate arbitrary power to any executive officer to say that under the same circumstances one rule of law shall apply to one or some individuals and another rule to others. The question of the extent to which the legislature may authorize others to do that which it might properly do yet cannot understandingly or advantageously do itself, has been considered by this court in numerous cases. The rule stated in Sutherland on Statutory Construction, section 68, is as follows: "The true distinction is between a delegation of power to make the law, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no objection can be made." Examples of this distinction are found in the cases

of *People* v. *Cregier*, 138 Ill. 401, and *Harrison* v. *People*, 222 id. 150. It is apparent that section 23 was not complete when it came from the legislature. No one could tell the amount of the bond required for the license as a dealer and broker in securities, or the conditions which it should contain, until the Secretary of State had fixed the amount and the terms and conditions in each particular case, and the section fixed no rules which he should follow in determining these questions. The appellant's objection to the constitutionality of these requirements of the section should have been sustained.

The appellee contends that the appellant is estopped from setting up the unconstitutionality of section 23. A person may waive his own personal, individual right to question the constitutionality of a statute or may be estopped to assert such right. Such an estoppel is based upon the prevention of a fraudulent result if one were permitted to dispute the existence of a state of facts which he has induced another to believe in and act upon. Before it can be invoked to the aid of the litigant it must appear that the person against whom it is invoked has by his words or conduct caused the litigant to believe in the existence of a certain state of things and induced him to act upon that belief. (*Sutter* v. *People's Gas Light Co.* 284 Ill. 634.) In *Holcomb* v. *Boynton*, 151 Ill. 294, it was said: "It is a novel idea in the law of estoppel that the doctrine should be applied to a person who has been guilty of no fraud, simply because under a misapprehension of the law he has treated as legal and valid an act void and open to the inspection of all." In *Washingtonian Home* v. *City of Chicago*, 157 Ill. 414, the court said: "An estoppel by matter *in pais* may be defined as an indisputable admission, arising from the circumstances, that the party claiming the benefit of it has, while acting in good faith, been induced by the voluntary, intelligent action of the party against whom it is alleged to change his position."

"It is well settled as a general proposition, subject to certain exceptions not necessary to be here noted, that where a party has availed himself, for his benefit, of an unconstitutional law, he cannot in a subsequent litigation with others not in that position aver its unconstitutionality as a defense, although such unconstitutionality may have been pronounced by a competent judicial tribunal in another suit. In such cases the principle of estoppel applies with full force and conclusive effect." (*Daniels* v. *Tearney,* 102 U. S. 415.) In that case a convention of the State of Virginia passed an ordinance in April, 1861, which declared that thereafter no execution (except in favor of the commonwealth and against non-residents) should be issued, and that where executions were in the hands of the officer, whether levied or not, if the debtors should offer bond and security for the payment of the debt, interest and costs, when the operation of the ordinance should cease the property should be restored and the bond should be returned as in the case of a forthcoming bond and should be a lien on the realty of the obligors. If the debtor offered no bond his property was to be appraised by three freeholders at its value on the 6th of November, 1860, and unless the property would sell for the amount of the valuation it should be restored to the debtor without lien. A bond was executed by the defendants on June 1, 1861, by which they bound themselves to pay the plaintiff $1597.18, subject to the condition that whereas, on the 25th of March, 1861, a writ of *fieri facias* was issued from the clerk's office in the name of Colin C. Porter against Benjamin F. Daniels for $747.92, with interest from the second day of January, 1860, until paid, and $31.97 costs; if, therefore, the said B. F. Daniels should pay the debt, interest and costs, when the operation of the ordinance before mentioned should cease then the obligation to be void, otherwise to be in full force. It was averred that the operation of the ordinance had long since ceased, and yet the defendant, though

often requested so to do, had not paid the said sums of money nor any part thereof, whereby an action had accrued, etc. The defense was that the ordinance was in violation of the constitution of the United States, and it was held that the ordinance was unconstitutional, but that the defendants having voluntarily entered into the bond and the principal having enjoyed the benefit of the stay of execution which it was intended to secure, the obligors in the bond could not, when a suit was brought after the expiration of the stay and a breach of the bond, raise the question of its validity but were estopped from availing themselves of such a defense.

In *United States* v. *Tingey,* 5 Pet. 115, a suit was brought against the defendant as surety upon the bond of a purser in the United States navy. One plea of the defendant alleged that an act of Congress of May 13, 1812, required that pursers of the navy should be appointed by the President and confirmed by the senate, and after the first of the next May no person should act in the character of purser who should not have been first nominated and appointed, excepting persons on distant service, and every person before entering upon the duties of his office should give bond, with two or more sufficient sureties, in the sum of $10,000, conditioned faithfully to perform the duties of purser in the navy of the United States; that after the passing of this act, and before the day of the date of the execution of the bond, the navy department of the United States caused the bond to be prepared and transmitted to the principal in the bond, and required and demanded of him that it should be executed by him, with two sufficient sureties, before he should be permitted to remain in the office and receive the pay and emoluments attached to said office; and it was further alleged that the condition of the bond was wholly variant and different from the condition which by law ought to have been required and varied and enlarged the duties and responsibilities of the principal

and his sureties, and was under color and pretense of the act of Congress and under color of office required and extorted from the principal in the bond, and from the defendant as his surety. The Supreme Court held the plea to be good. Its substance was that the bond, with the condition variant from that prescribed by law, was under color of office extorted from the principal and his sureties, contrary to the statute, by the Secretary of the Navy as a condition of the principal remaining in the office of purser and receiving its emoluments. It was said there was no pretense to say that it was a bond voluntarily given, or that, though different from the form prescribed by the statute, it was received and executed without objection. It was demanded of the party upon the peril of losing his office. It was extorted under color of office, against the requisitions of the statute. It was plainly an illegal bond, for no officer of the government has a right, by color of his office, to require from any subordinate officer, as a condition of holding office, that he should execute a bond with a condition different from that prescribed by law. That would be not to execute but to supersede the requisitions of law.

It is stated as a general rule of law in *City of Portland* v. *Portland Bituminous Paving Co.* 33 Ore. 307, that where the obligor has obtained and availed himself of the benefits to be derived from the execution of the bond, neither he nor his sureties can defeat their liability because of some irregularity in the proceeding in which the bond originated. Having obtained the benefit they are estopped from setting up the irregularity. The case of *Daniels* v. *Tearney, supra,* is an illustration of this rule. In *Estate of Ramsay* v. *People,* 197 Ill. 572, it is said: "Where a public officer gives a bond, under which he is allowed to receive moneys and does actually receive them by virtue of his office, he and his sureties are estopped from denying the validity of such bond when sued for breach of its condition." The case of *Stevenson* v. *Morgan,* 67 Neb. 207, is another illus-

tration of the rule. The bond in that case was an appeal bond from a forcible entry and detainer judgment, by reason of which the appellant, the principal in the bond, retained possession of the property. Suit was brought against the surety. The statute authorizing appeals and appeal bonds in such cases had in the meantime been declared unconstitutional and the surety defended on that ground, but the judgment was affirmed on the ground that the principal had received the benefit of the statute in the retention of the property during the pendency of the appeal, and that therefore the liability on the bond was not affected by the unconstitutionality of the statute. Estoppel applies only against a person who has by his words or conduct induced a belief in the existence of a state of facts upon which another has been induced to act. Gettelman & Co. in the absence of the statute had the right to engage in the business of dealer and broker in securities without giving any bond. The State, in the exercise of the police power, had authority to regulate that business and require such safeguards as were appropriate to protect investors against the dishonesty of dealers. The requirement of a bond from dealers and brokers in securities is an appropriate means to adopt for the protection of those dealing with them, but the legislature must itself determine what the terms and conditions of the bond must be, and, if classification is intended, must fix the reasonable terms of classification which govern the amount and condition of the bonds. The section is defective in that it does not comply with the constitutional requirements. Therefore Gettelman & Co. was not obliged, as a condition of engaging in the business of dealer and broker in securities, to give a bond. The giving of the bond gave it no better right to engage in the business than it had without the bond. The bond was without consideration. The company received no benefit from it. Even if it was fraudulently given, the rule which has been announced, that where the obligor has obtained and availed

himself of the benefits to be derived from the execution of the bond he cannot defeat liability because of the unconstitutionality of the statute, does not apply. That rule requires that a party shall have availed himself, for his own benefit, of an unconstitutional law, but the facts are that the defendant did not and could not avail itself of the statute for its benefit. Without the law Gettelman & Co. had the right to engage in the business of dealer and broker in securities. It needed no license or permission to do so. The legislature in the passage of the Illinois Securities law required that such dealers and brokers should procure a license. In the exercise of the police power it had authority to impose such a requirement, but in attempting to require a bond as a condition precedent to the license the legislature failed to do so because of its attempted unconstitutional delegation of legislative power in regard to the bond to the Secretary of State. This attempted delegation of power being in violation of the constitution, section 23 is void and must be eliminated from consideration in the enforcement of the act. The appellant has not induced the appellee, by any action which it has taken or statement which it has made, to believe in the existence of any state of facts and to act upon that belief. As said in *Holcomb* v. *Boynton, supra,* quoted in *Sutter* v. *People's Gas Light Co. supra,* it would be a novel idea in the law of estoppel to apply the doctrine to a person who has been guilty of no fraud, simply because under a misapprehension of the law he has treated as legal and valid an act void and open to the inspection of all.

The causes of action on the bond are based entirely on section 23 of the law. That section being void and the defendant being bound by no estoppel or waiver, the appellee has shown no liability of the defendant to it in these actions.

The judgments of the municipal court of Chicago are reversed.

*Judgments reversed.*