(No. 21567—)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MAX YONKER, Plaintiff in Error.

*Opinion filed December 23, 1932—Rehearing denied Feb. 8, 1933.*

SCHWARTZ & COOPER, (EDWARD A. COOPER, and NATHAN M. OPPENHEIM, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, JOHN A. SWANSON, State's Attorney, J. J. NEIGER, JOHN E. PEDDERSON, and JAMES L. HENRY, for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was charged, by an information filed in the municipal court of Chicago, with the violation of an act entitled, "An act to prevent the fraudulent sale and to regulate the sale and advertising for sale of goods, wares and merchandise, and to provide penalties for the viola-

tion hereof," approved July 7, 1931. (Cahill's Stat. 1931, p. 2479; Smith's Stat. 1931, p. 2602.) On hearing, on stipulation of facts, he was found guilty and fined the sum of $50. He brings the cause here for review on the ground that the constitutionality of the act is involved.

Plaintiff in error was manager of the London Mode, Ltd., a corporation which for a number of years occupied the store room, basement and two additional floors at 209 South State street, in the city of Chicago. That corporation, under a lease from the owners of the building, paid a rental amounting to approximately $60,000 per year. On April 29, 1932, its manager advertised in Chicago newspapers that the firm was forced to quit business and remove from the building by reason of the expiration of the lease on September 30, 1932, and that it would conduct 'a sale for the purpose of closing out its stock. The charge in the information is that such sale was being advertised without an application for a license, as required by the act referred to.

The first section of this act declares that "no person shall advertise, represent or hold out that any sale of goods, wares and merchandise is an insurance, bankruptcy, mortgage, insolvent, assignee's, executor's, administrator's, receiver's, trustee's, removal or closing out sale, or a sale of goods, wares and merchandise damaged by fire, smoke, water or otherwise, unless he shall have first obtained a license to conduct such sale from the clerk of the city, village, or township in which he proposes to conduct such a sale." It is also by the first section required that the vendor file with the clerk an application for license, in writing, under oath, "showing all the facts in regard to the insurance, bankruptcy, mortgaging, insolvency, assignment, administration, receivership, trusteeship, or removal by reason of which such sale is to be conducted, or in regard to the closing out of his stock of goods, wares or merchandise or any particular line or part thereof, with a statement as

to the reason for such closing out, or in regard to the injury caused to such goods, wares or merchandise by fire, smoke, water, or otherwise, and showing all the facts in regard to the sale which he proposes to conduct and the place and manner of conducting the same, including an inventory of the goods, wares, and merchandise to be sold at such sale, and a statement, as far as possible, of the names of the persons from whom the goods, wares and merchandise so to be sold were obtained, the date of the delivery of such goods, wares and merchandise to the person applying for the license, and the place from which said goods, wares and merchandise were last taken and all details necessary to fully identify the goods, wares and merchandise so to be sold." It also provides that the license shall not issue for a greater period than three months, though it may be extended for a like period of three months if it be made to appear from a sworn application to the clerk during said period of three months that not all of the goods had been sold and an inventory of goods remaining is filed with such supplemental application. This section requires that in addition to the facts above enumerated the applicant shall designate the character of sale he proposes to conduct. It further provides: "If such clerk shall be satisfied from said application that said proposed sale is of the character which the applicant desires to conduct and advertise, said clerk shall issue a license, upon the payment of the fee of two dollars therefor, to the person applying for the same, authorizing him to advertise and conduct a sale of the particular kind mentioned in the application, according to the requirements of this act." Section 2 of the act provides the method by which the clerk shall keep a record of such applications and licenses, together with his notations as to the issuance or refusal of the license applied for. By section 4 the license, when issued, shall be valid only for a sale of the goods, wares and merchandise inventoried and described in the application

and in the manner and at the time and place mentioned therein. It is then also provided: "Any removal of such goods, wares and merchandise so inventoried and described in such application from the place of sale mentioned in such application, shall cause such goods, wares and merchandise to lose their identity" as one of the kinds of property and sales enumerated in section 1 of the act, "and no license shall thereafter be issued for the conducting of a sale of any of such goods, wares or merchandise so removed from the place set forth and described in such application, under the provisions of this act, at any other place or places." By section 5 no one wishing to conduct a sale under the license provided by the act "shall order any goods, wares or merchandise for the purpose of selling and disposing of the same at such sale, and any unusual purchase and additions to the stock of such goods, wares or merchandise within sixty days prior to the filing of the application for license to conduct such sale mentioned in section 1 of this act shall be presumptive evidence that such purchases and additions to stock were made in contemplation of such sale and for the purpose of selling the same at such sale." By section 6 it is provided that no person conducting a sale authorized by the act shall during continuance of the sale "add any goods, wares or merchandise to the stock of goods, wares, or merchandise described and inventoried in his original application for such license, and no goods, wares or merchandise shall be sold at or during such sale excepting the goods, wares or merchandise described and inventoried in such original application, and each and every addition of goods, wares or merchandise to such stock of goods, wares or merchandise described and inventoried in said application, and each sale of such goods, wares or merchandise as were not inventoried and described in said application, shall constitute a separate offense under this act." By section 7 anyone who advertises a sale of any of the kinds described in the act without first com-

plying with the provisions of the act shall be deemed guilty of misdemeanor and upon conviction fined in a sum of not less than $50 nor more than $500, or shall be imprisoned in the county jail for not less than ten days nor more than six months, or both, in the discretion of the court. By section 8 it is provided that anyone who shall hold, conduct or carry on any sale of the kinds enumerated in the act without complying with the provisions of the act shall be deemed guilty of a misdemeanor and on conviction suffer the punishment designated in section 7. Section 9 is the last section of the act and is as follows: "The provisions of this act shall not apply to sheriffs, constables, or other public or court officers, or to any other person or persons acting under the license, direction or authority of any court, State or Federal, selling goods, wares or merchandise in the course of their official duties."

It will be observed that the act in question does not define or describe an insurance sale, a bankruptcy, mortgage, insolvent, assignee's, executor's, administrator's, receiver's, trustee's or removal or closing out sale, and unless those terms have a commonly accepted and understood meaning it cannot be determined until the clerk evidences that he is satisfied from the application whether the sale proposed by the applicant is of a character to which the act is to be applied. In the absence of commonly accepted and understood definitions of those terms it cannot be determined whether the clerk was correct or incorrect in finding that the facts set out in the application did or did not show that the applicant proposed to conduct a sale of the kind designated in his application. If, on the other hand, the various kinds of sales as named in the act are so well understood and the definitions of such terms so well known as to be matters of common knowledge, then no unwarranted discretion is given the clerk to determine whether the facts set out in the petition describe a sale designated by the act and such determination is a ministerial duty.

As we have seen, section 9 excludes sheriffs, constables or other public or court officers, or any person or persons acting under the license, direction or authority of any court, State or Federal, who desire to sell goods, wares or merchandise in the course of their official duties. It is a matter of which courts will take judicial notice that bankruptcy sales are frequently conducted under an order of court, as are mortgage sales, executor's, administrator's, receiver's and trustee's sales. In fact, when selling goods and merchandise, executors, administrators, receivers and trustees do so under an order of court and in their official capacity or by virtue of a will or other instrument or facts authorizing such sale. Among the matters to be determined by the clerk is whether the sale for which license is sought is or is not within the exceptions of section 9. If, for example, the application sets out, as it must, the source of the trustee's power, the clerk must determine whether that power is derived from a "license, direction, or authority of any court, State or Federal," and whether the trustees in such sale are acting "in the course of their official duties." If he shall determine that such sale does not come within the exceptions in section 9, he then must from the facts of the application determine whether such sale is, in fact, a trustees' sale, as disclosed by the instrument or other facts empowering the trustees to deal with the property and whether such trustees thereby have been given the power to sell. To aid the clerk in this matter there is in the statute merely the enumeration of various kinds of sales, with a large number of exceptions thereto. No definition, direction or limitation is placed on him, unless the definition of these terms can be said to come within the range of common knowledge. The act provides no review of the clerk's decision.

It will be observed that the act is not limited merely to advertising sales of goods, but under section 8 of the act anyone who conducts a sale of the kind enumerated

without complying with the act must suffer the penalty there imposed. This must be construed as requiring license to conduct such a sale though no advertising thereof is contemplated or carried on. It is also to be further observed that the act, so far as its language discloses, is applicable, at least as to some of the sales there enumerated, not only to stocks of goods such as are sold by merchants in stores, but to the sale of any goods, wares or merchandise which the vendor desires to sell as an insurance, bankruptcy, mortgage or other character of sale enumerated in the act. If it be said that the legislature intended that the act apply only to stocks of merchandise usually sold by dealers, the answer is that such singleness of purpose is not evidenced by the act. So far as the act shows, it is applicable to a farmer who, desiring to retire, advertises and conducts a sale closing out his equipment. If a closing out sale as named in the act does not include a sale of the implements and stock of a farmer who desires to retire, such distinction is not to be found in the act. The act is silent as to what shall constitute an insurance or other sale there enumerated, and in view of the variety of transactions which may be included under one or more of the kinds of sales enumerated in the act, we are of the opinion that it can not be said that those terms have such a well defined, settled and commonly known meaning as to deprive the clerk of discretion in determining whether the facts set out in the application bring the proposed sale within the terms of the statute and within the definition of the kind of sale designated by the applicant. It is therefore left to the clerk to determine not only whether there was a compliance with the law but what the law is.

It must be regarded as long settled in this State that an act to be valid must be complete when it leaves the legislature. If it leaves to a ministerial officer the definition of the thing to which the act is to be applied, such definition not being commonly known, it is invalid as an un-

146

warranted and void delegation of legislative power to an administrative officer. (*Welton* v. *Hamilton,* 344 Ill. 82; *City of Chicago* v. *Matthies,* 320 id. 352; *People* v. *Sholem,* 294 id. 204; *Kenyon* v. *Moore,* 287 id. 233; *People* v. *Vickroy,* 266 id. 384; *Sheldon* v. *Hoyne,* 261 id. 222; *Noel* v. *People,* 187 id. 587.) It is true, as this court has frequently said, the method and manner of enforcing a law must of necessity be left to the reasonable discretion of administrative officers, but an act of the legislature which vests in such officers the discretion to determine what the law is, or to apply it to one and refuse its application to another in like circumstances, is void as an unwarranted delegation of legislative authority. (*Welton* v. *Hamilton,* *supra.*) We are of the opinion that this act vests an unwarranted discretion in the clerk, and is therefore open to the objection that it is not complete and is for that reason invalid.

The judgment of the municipal court is reversed.

*Judgment reversed.*