(No. 22952.—)

INEZ CORCORAN VALLAT, Appellant, *vs.* THE RADIUM DIAL COMPANY, Appellee and Cross-Appellant.

*Opinion filed April 17, 1935—Rehearing denied June 6, 1935.*

J. S. COOK, and JOSEPH B. BERGMAN, for appellant.

DUNCAN & O'CONOR, and MOSES, KENNEDY, STEIN & BACHRACH, (ANDREW J. O'CONOR, WALTER BACHRACH, and ARTHUR MAGID, of counsel,) for appellee and cross-appellant.

SAMUEL A. ETTELSON, *amicus curiæ.*

Mr. Justice Farthing delivered the opinion of the court:

Appellant, Inez Corcoran Vallat, filed her complaint in the superior court of Cook county and asked $50,000 damages from the Radium Dial Company, appellee and cross-appellant, on account of an alleged illness she contracted as a result of a violation of section 1 of "An act to promote the public health by protecting certain employees in this State from the dangers of occupational diseases, and providing for the enforcement thereof," approved May 26, 1911, (Laws of 1911, p. 330; Smith's Stat. 1933, p. 1401; Cahill's Stat. 1933, p. 1375;) which provides: "That every employer of labor in this State, engaged in carrying on any work or process which may produce any illness or disease peculiar to the work or process carried on, or which subjects the employees to the danger of illness or disease incident to such work or process, to which employees are not ordinarily exposed in other lines of employment, shall, for the protection of all employees engaged in such work or process, adopt and provide reasonable and approved devices, means or methods for the prevention of such industrial or occupational diseases as are incident to such work or process." By sections 11 and 12 of the act the State Department of Factory Inspection must enforce the act, and, upon notice from that department, employers are required to install approved devices, means or methods reasonably necessary. This department conducts prosecutions for violations of the act. If occupational disease is found in any place of employment by the department's inspector or called to its attention by the State Board of Health, and it is the opinion of the inspector that such disease was caused in whole or in part by a disregard of the provisions of the act or a failure of the employer to adopt reasonable appliances, devices, means or methods which are known to be reasonably adequate and sufficient to prevent the con-

traction or continuation of such disease, the department is required to immediately notify such employer to install adequate and improved devices, etc., and to comply with all of the provisions of the act.

The complaint alleged that long prior to, and in May, 1929, defendant was manufacturing illuminated dials, etc., and plaintiff was its employee. Her work was painting dials with a luminous paint. The paint used contained radium, to which substance and its effects the stipulation of the parties has limited this case. It is alleged that particles of dust, consisting largely of radium, were thrown off, and that plaintiff inhaled, swallowed and otherwise took into her system these particles. It is alleged that plaintiff, as such employee, was thus subjected to danger of illness and disease incident to such work to which employees in other lines of employment are not ordinarily exposed, and that radium's harmful results are anemia, rarefaction of the bones, alveoli of the jaws, and other bone complications and disorders. The complaint charged that defendant carelessly and negligently failed to provide reasonable and approved devices, means or methods for the prevention of such occupational diseases incident to the work in hand, but permitted air surrounding the plaintiff while at work to be impregnated and saturated with dust containing radium; that by reason of the conditions described under which plaintiff was compelled to work, and as a result of such negligence of defendant, plaintiff contracted anemia, rarefaction of the bones, etc., above set out.

Appellee filed its motion for judgment, saying that section 1 of the Occupational Diseases act is unconstitutional and void in that it fails to set up an intelligible standard of duty and violates the due process clauses of the State and Federal constitutions, and also violates article 3 of the State constitution, in that, when considered in connection with sections 11 and 12 of the act, it unlawfully confers legislative powers upon the State Department of Factory

Inspection; second, that the complaint failed to allege facts sufficient to show plaintiff sustained any disablement during the period of her alleged employment by defendant. In substance, the remaining grounds of defendant's motion were that the complaint did not state a cause of action under section 1 of the act, but if a cause of action is stated it would be under section 2 and would be governed by the Workmen's Compensation act; that plaintiff had neither a common law nor a statutory remedy, because the complaint shows on its face that she was not an employee of defendant when the disease affected her, and also shows on its face that suit was not filed within two years next after the cause of action accrued. The trial court sustained the motion for judgment on the single ground that plaintiff's claim was governed by section 2 of the act. The suit was dismissed and plaintiff appealed. The defendant prayed a cross-appeal, and since the constitutionality of section 1 is questioned the case comes here directly.

The Occupational Diseases act is designed to ameliorate harmful and dangerous working conditions and is humanitarian in purpose. Like all statutes, it should be sustained as a valid enactment if this can be done, and it should be declared to be unconstitutional only if, after the rules of construction are applied, it is found that the legislature has gone beyond its powers or has failed to enact an intelligible and valid law.

It is contended that those words in section 1 which are under fire, "reasonable and approved devices, means or methods for the prevention of such industrial or occupational diseases as are incident to such work or process," do not meet the requirements of "due process of law," but are vague, indefinite, and do not furnish any intelligible standard of conduct to be observed by employers.

The rule to be applied in determining whether a standard of sufficient definiteness and certainty is contained in a statute was stated in *Connally* v. *General Construction*

*Co.* 269 U. S. 385, 391, where it is said: "The question whether given legislative enactments have been thus wanting in certainty has frequently been before this court. In some of the cases the statutes involved were upheld; in others declared invalid. The precise point of differentiation in some instances is not easy of statement, but it will be enough for present purposes to say, generally, that the decisions of the court upholding statutes as sufficiently certain rested upon the conclusion that they employed words or phrases having a technical or other special meaning well enough known to enable those within their reach to correctly apply them, (*Hygrade Provision Co.* v. *Sherman,* 266 U. S. 497, 502; *Omaechevarria* v. *Idaho,* 246 id. 343, 348;) or a well-settled common-law meaning, notwithstanding an element of degree in the definition as to which estimates might differ, (*Nash* v. *United States,* 229 U. S. 373, 376; *International Harvester Co. of America* v. *Kentucky,* 234 U. S. 216;) or, as broadly stated by Mr. Chief Justice White in *United States* v. *Cohen Grocery Co.* 255 U. S. 81, 92: 'That, for reasons found to result either from the text of the statutes involved or the subjects with which they dealt, a standard of some sort was afforded.' See, also, *Waters-Pierce Oil Co.* v. *Texas,* 212 U. S. 86, 108."

In *People* v. *Mancuso,* 255 N. Y. 463, 175 N. E. 177, the New York Court of Appeals, speaking through Mr. Chief Justice Cardozo, said: "Much will depend on the distinction whether the standard is an old one, long recognized in law and life, (*International Harvester Co. of America* v. *Kentucky,* 234 U. S. 216, 223, 34 Sup. Ct. 853, 855, 58 L. ed. 1284,) or one novel and unfamiliar, not yet approaching certainty, at least in measurable degree, through habitude and example. On one side of the line is the standard of care or judgment exacted by the statute in supplying a working place or tools for servants. (Labor law, Consol. Laws, c. 31, secs. 240, 436; Employers' Liability law, Consol. Laws, c. 74, sec. 2; Penal

law, secs. 1275, 1276; *People ex rel. Price* v. *Sheffield Farms-Slawson-Decker Co.* 225 N. Y. 25, 121 N. E. 474;) or in driving on a highway, (*Nash* v. *United States, supra,* 229 U. S. p. 377, 33 Sup. Ct. 780, 57 L. ed. 1232; *People* v. *Angelo,* 246 N. Y. 451, 159 N. E. 394;) or in the avoidance of a monopoly or of undue restraints on competition. (*Nash* v. *United States, supra.*) See, also, for additional illustrations, *Miller* v. *Strahl,* 239 U. S. 426, 434, 36 Sup. Ct. 147, 60 L. ed. 364; *Avent* v. *United States,* 266 U. S. 127, 130, 45 Sup. Ct. 141, 69 L. ed. 402; *Omaechevarria* v. *Idaho,* 246 U. S. 343, 348, 38 Sup. Ct. 323, 62 L. ed. 763. In these and like instances 'a great body of precedents on the civil side, coupled with familiar practice, make it comparatively easy for common sense to keep to what is safe.' (*International Harvester Co. of America* v. *Kentucky, supra.*) On the other side is a statute imposing a penalty on any person who makes 'any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries,' (*United States* v. *L. Cohen Grocery Co.* 255 U. S. 81, 86, 41 Sup. Ct. 298, 300, 65 L. ed. 516, 14 A. L. R. 1045,) where neither accepted norms of conduct nor common-law traditions of customary diligence give definiteness and significance to the acts to be avoided. (*Connally* v. *General Construction Co.* 269 U. S. 385, 46 Sup. Ct. 126, 70 L. ed. 322; *Cline* v. *Frink Dairy Co.* 274 U. S. 445, 459, 47 Sup. Ct. 681, 71 L. ed. 1146.) Not even a civil liability can rest upon a prohibition so vague and indeterminate."

In order that a statute may be held valid the duty imposed by it must be prescribed in terms definite enough to serve as a guide to those who have the duty imposed upon them. Such definiteness may be produced by words which have a technical or other special meaning well enough known to permit compliance therewith or words which have an established meaning at common law through decisions; but if the duty is imposed by statute through the use of words which have not yet acquired definiteness or certainty

and which are so general and indefinite that they furnish no such guide the statute must be declared to be invalid. When it leaves the legislature a law must be complete in all its terms, and it must be definite and certain enough to enable every person, by reading the law, to know what his rights and obligations are and how the law will operate when put into execution. (*Mayhew* v. *Nelson,* 346 Ill. 381, 387.) If the statute leaves it to a ministerial officer to define the thing to which the statute is to be applied, and if the definition is not commonly known in the modes already pointed out, the act becomes invalid, because it creates an unwarranted and void delegation of legislative power. *People* v. *Yonker,* 351 Ill. 139, 145.

No decisions are cited which contain definitions of the words "reasonable and approved devices, means or methods," and it is not contended that this phrase has a common-law meaning or a generally accepted meaning, or that the act itself furnishes a clear, definite and certain enough meaning to enable employers to know what norms of conduct and what standard of equipment are intended by section 1. The enforcement of the act is left to the State Department of Factory Inspection, and employers are required to install and adopt, respectively, apparatus and means or methods that are approved, but neither section 11 nor section 12 says specifically whose approval is to be obtained. What, then, is the sense in which "reasonable" is to be taken? Is it reasonable in care, price, size, adaptability, coördination with factory or plant or reasonable in results? Who is to be the one to say what devices, means or methods are "approved"? Is it the public, which knows nothing definite about many manufacturing processes and many and varied factories? It is not the department itself, apparently. In section 12 the word "adequate" is used, but the act itself was intended to prevent diseases peculiar to the particular employment; and if the department named is that which furnishes the definition of what

is reasonable and approved, the legislature has not furnished such definition but has delegated to that department the duty to tell employers what the law shall be. Such a law is incomplete and such words do not furnish the standard that employers are entitled to have given them so that they may have a chance to obey. This might defeat the ends desired by leaving the matter so vague that only part of the humanitarian purpose of prevention of diseases peculiar to particular employments would be achieved. This anomalous result might be reached: In a suit by one employee against his employer the jury might find the device, means or methods employed reasonable and approved and render its verdict for the employer. In another suit against that employer by a different employee in the same plant the jury might reach a diametrically opposite verdict. If there were no other circumstances involved, assuming that the trial court followed its duty, motions for new trials in both cases should be overruled. Relief would thus be granted to one employee who was a victim of the particular occupational disease while relief would be denied to another such employee under exactly the same circumstances.

There is no question as to the need and imperative right that men, women and children engaged in such occupations should have to be guarded against destruction or impairment of health. This end must be obtained by laws that are themselves a protection, and it is not a compliance with the due process provisions of our fundamental law if the duty be put upon employers without some accurate and definite chart and compass to guide them towards the humane results intended. The phrase involved in the statute under consideration in *Mayhew* v. *Nelson,* 346 Ill. 381, was "prevailing rate of wages for work." We there held that due process was not met by that phrase, and also that an unlawful delegation of legislative authority had been made. In *People* v. *Yonker,* 351 Ill. 139, 143, we said: "It will be observed that the act in question does not de-

fine or describe an insurance sale, a bankruptcy, mortgage, insolvent, assignee's, executor's, administrator's, receiver's, trustee's or removal or closing-out sale, and unless those terms have a commonly accepted and understood meaning it cannot be determined until the clerk evidences that he is satisfied from the application whether the sale proposed by the applicant is of a character to which the act is to be applied." In this latter case we held that there was a lack of definiteness and that legislative power had been delegated to the city clerk, and that the act was incomplete and void.

The foregoing discussion, without considering other objections to the complaint, sufficiently shows that section 1 of the Occupational Diseases act is not only uncertain, vague and indefinite, but that, when considered with sections 11 and 12, the section and the act are incomplete, and the act delegates legislative powers to an administrative department of the State whose officers would be compelled to supply the missing definite standard. Accepted rules of construction do not avail to show the legislative intent and courts have no power to supply the omissions of this statute. No person by reading this enactment can know with reasonable certainty what rights it confers and what obligations and duties it lays upon the cross-appellant. Section 1 is therefore void.

No purpose can be served in discussing the remaining questions as to whether the trial court erred in holding that appellant's claim was one governed by section 2 of this act and therefore compensable under the Workmen's Compensation act; whether no cause of action was stated where it appeared that the disease or illness complained of developed after employment of appellant by cross-appellant had ceased, or whether by motion for judgment the two-year Statute of Limitations can be availed of where it appears from the face of the complaint that the suit was not brought within two years from the date of the last exposure

416

to radium dust suffered by appellant. This decision is limited strictly to the constitutional question.

The cross-appellant's motion for judgment should have been sustained on the ground that section 1 of the Occupational Diseases act is unconstitutional. The judgment of the trial court is therefore affirmed.

*Judgment affirmed.*