SCHOOL DISTRICT No. 39 OF WASHINGTON COUNTY, NEBRASKA, APPELLANT, V. FREEMAN DECKER, SUPERINTENDENT OF PUBLIC INSTRUCTION, APPELLEE.

68 N. W. 2d 354

Filed February 4, 1955. No. 33624.

*Van Pelt, Marti, & O'Gara, Roy I. Anderson,* and *Emory P. Burnett,* for appellant.

*Clarence S. Beck,* Attorney General, and *Robert V. Hoagland,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, School District No. 39 of Washington County, generally known as Rose Hill School District, is a rural Class II school district conducting both elementary and ninth and tenth high school grades in Washington County. It brought this action in equity to enjoin the enforcement of Rule III-3 of Section B, "Criteria for Approved Schools" promulgated as of July 1, 1952, by defendant Freeman Decker, then Superintendent of Public Instruction, under purported authority granted him by the last sentence of section 79-307, R. R. S. 1943. Such section provides: "The Superintendent of Public Instruction shall prescribe forms for making all reports and regulations for all proceedings under the general school laws of the state. *He shall also formulate rules and regulations for the approval of all high schools for the collection of free high school tuition money.*" (Italics supplied.)

Rule III-3 also provides: "The teacher-pupil ratio for high school (grades 9-12) shall not be less than 1-5."

On May 12, 1953, defendant had removed plaintiff's high school from the list of approved schools for the school year 1953-1954 because its teacher-pupil ratio was "1-4 which is less than the minimum standards" required by Rule III-3. Concededly, such removal made plaintiff ineligible for collection of free high school tuition for nonresident pupils, deprived it of exemption

from the free high school tax levy together with the right to be considered for accreditation status, and, as stated by defendant, "so far as our records are concerned, there is no high school in Rose Hill."

Insofar as important here, plaintiff sought injunctive relief primarily upon the ground that the last sentence of section 79-307, R. R. S. 1943, was an unconstitutional and invalid delegation of legislative authority and power to an executive or administrative officer of the state. In other words, plaintiff contended that Rule III-3 was invalid and unenforceable because such statute granted defendant authority to "formulate rules and regulations for the approval of all high schools for the collection of free high school tuition money" without therein or otherwise in any statute in pari materia therewith providing any legislative numerical limitations, standards, rules, or criteria for the guidance of defendant in so doing.

Upon issues duly joined there was a hearing in the district court whereat evidence was adduced and a judgment was rendered finding and adjudging the issues generally for defendant and against plaintiff. In doing so, it was found and adjudged that section 79-307, R. R. S. 1943, was a valid, legal statute, and not unconstitutional as a delegation of legislative powers, and that Rule III-3 promulgated thereunder was valid and enforceable.

In that connection, section 79-1247.02, R. R. S. 1943, was also found to be constitutional. However, that question was not made an issue either factually or by any pleading filed by the parties herein. Such section was also evidently relied upon by the trial court in arriving at its final conclusions, and for the purpose of argument only, we may assume its constitutionality. However, such section deals solely with the accreditation and classification of elementary and secondary schools by an accreditation committee appointed by the Superintendent of Public Instruction. We conclude that it has

no controlling relation to the validity of section 79-307, R. R. S. 1943, which deals solely with approval by the Superintendent of Public Instruction of all high schools for the collection of free high school tuition. In fact, section 79-1247.02, R. R. S. 1943, clearly provides that no school is to be considered by such accreditation committee for accreditation status which has not first been approved by the Superintendent of Public Instruction. Thus, accreditation and approval are two separate and entirely different duties, imposed by separate statutes upon different officers. In that regard, defendant testified: "Q- Approval and accreditation are not the same? A- Approval and accreditation are not the same; that is right. Q- There are many schools that are approved that might not be accredited? A- That is right. Q- And when discussing this case here you understand, I believe, and I state this to be my understanding, we are not talking about accredited? A- That is right. It doesn't even enter into the picture, so far as I am concerned. Q- We are only talking about approval. A- That is right."

Plaintiff's motion for new trial was overruled, and it appealed, assigning substantially that the judgment of the trial court was contrary to the evidence and the law. We sustain the assignment.

The first sentence of section 79-307, R. R. S. 1943, has existed substantially in its present form since the enactment of Laws of Nebraska, 1881, Chapter 78, Subdivision VIII, section 5, page 363. However, the last sentence of section 79-307, R. R. S. 1943, heretofore italicized, was no part thereof until the enactment of Laws of Nebraska, 1949, Chapter 256, Article III, section 28, page 701. Thus, the two sentences are entirely separable, and the enactment of the second could not have been the inducement for enactment of the first. Concededly, constitutionality of the first sentence is not questioned and is not an issue in this case. Only the constitutionality of the second sentence and the

validity of Rule III-3 promulgated thereunder are assailed by plaintiff.

As early as Scott v. Flowers, 61 Neb. 620, 85 N. W. 857, this court held: "Where there is a conflict between an act of the legislature and the constitution of the state, the statute must yield to the extent of the repugnancy, but no further.

"If, after striking out the unconstitutional part of a statute, the residue is intelligible, complete and capable of execution, it will be upheld and enforced, except in cases where it is apparent that the rejected part was an inducement to the adoption of the remainder."

For reasons hereinafter set forth, we conclude that only the last sentence of section 79-307, R. R. S. 1943, is unconstitutional as a delegation of legislative authority in violation of Article II, section 1, and Article III, section 1, Constitution of Nebraska, and that Rule III-3 promulgated by defendant is invalid and unenforceable because neither section 79-307, R. R. S. 1943, nor any other statute in pari materia therewith contains any limitations or standards making approval of high schools dependent in any manner upon the number of its students as defendant has legislatively attempted to do. In that connection, defendant has called our attention to sections 79-328 and 79-701, R. S. Supp., 1953. However, such sections did not become effective until September 14, 1953, and thus have no controlling application here.

The evidence was not in dispute. Plaintiff's high school teacher was qualified, and "was doing some fine work as far as classroom teaching was concerned." Plaintiff's school grounds, building, and equipment met every requirement. All physical improvements suggested by defendant had been duly perfected by plaintiff. In fact, by so doing plaintiff had expended $3,646.75 during the last 5 years. Photographs received, together with other competent evidence, demonstrate that the district owned an excellent, fully equipped, and attractive physical plant, modern throughout. On May 8,

1953, a member of defendant's staff wrote plaintiff's principal that "consistent with the Department's policy" it was impossible to recommend approval of their high school for the next year because: "The teacher-pupil ratio for high school is 1-4, which is less than the minimum standards for approval as set forth in Section B of the bulletin, *Approval and Accreditation of Nebraska Schools.*" Thereafter, on May 12, 1953, defendant notified plaintiff's officers that its high school had been removed from the list of approved schools for the school year 1953-1954 because under "Section B (page 8, bulletin, Approval and Accreditation of Nebraska Schools) III-3 The teacher-pupil ratio for high school is 1-4 which is less than the minimum standards for approval as indicated."

Plaintiff's school is located near the center of Washington County. The district owns no means for pupil transportation and the nearest high school having ninth and tenth grades is 5 miles or more therefrom over roads that are often impassable. Further, it is 11 miles or more to the Blair high school over roads that are sometimes impassable during winter or spring, and that district owns no means for pupil transportation.

Plaintiff had five or more students in its ninth and tenth grades during 1951-1952; four students during 1952-1953; and five students during 1953-1954, with prospects for more in the near future. The district consists of all of four sections and parts of four other sections of land in Washington County, and had an assessed valuation of $565,295 for 1953, with expenses of $6,356.66, requiring a tax levy of 14.9 mills.

As disclosed by the record, defendant admitted that there is no magic in the ratio of 1-5 required by Rule III-3, and that it could as well have been higher or lower, but should be higher. As a matter of fact, defendant also admitted that there are only eight ninth and tenth grade high schools left in Nebraska but that in the recent past he had waived the ratio of 1-5 for

two or three other like high schools in Washington County because they had prospects for more students in the future, or had suggested the possibility of reorganization.

Thus the Superintendent of Public Instruction has been delegated a free hand without legislative limitations or standards to make or change at will any numerical ratio or standard required for approval of high schools for the collection of free high school tuition money when it would have been a simple matter for the Legislature, which had the power and authority, to have incorporated limits and standards in the statute. As a consequence, without questioning the motives or ability of the Superintendent of Public Instruction, there might well be approval of some high schools upon one standard and a withholding of approval from others by a qualification of such standard or by virtue of another. Thus, defendant had arbitrary power over the life or death of all high schools in this state and the preservation or destruction of their property and the grant or denial of free high school revenue, dependent upon the granting or refusal of approval.

Article II, section 1, Constitution of Nebraska provides: "The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted."

Also, Article III, section 1, Constitution of Nebraska, provides in part: "* * * the legislative authority of the state shall be vested in a Legislature consisting of one chamber."

Also, Article VII, section 6, Constitution of Nebraska, provides: "The legislature shall provide for the free instruction in the common schools of this state of all persons between the ages of five and twenty-one years."

And, Article XVII, section 6, Constitution of Nebraska, provides: "The Legislature shall pass all laws necessary to carry into effect the provisions of this constitution."

In 47 Am. Jur., Schools, § 9, p. 302, it is said: "Generally speaking, school laws must comply with the rules governing the validity of statutes, and must not violate constitutional requirements applicable to all laws alike, such as those relating to title and subject matter, or prohibiting special or local legislation. So also, general rules governing the effect of the partial invalidity of statutes have been applied to school laws.

"Rules for the construction of statutes generally apply in the case of school laws. The rule has been stated that laws for the conduct and government of public educational institutions should be construed so as best to subserve the purpose intended by them, provided well-established rules of construction are observed and the rights of citizens not violated."

As said in 42 Am. Jur., Public Administrative Law, § 45, p. 342, citing authorities from many states: "It is a fundamental principle of our system of government that the rights of men are to be determined by the law itself, and not by the let or leave of administrative officers or bureaus. This principle ought not to be surrendered for convenience, or in effect nullified for the sake of expediency. However, it is impossible for the legislature to deal directly with the host of details in the complex conditions on which it legislates, and when the legislature states the purpose of the law and sets up standards to guide the agency which is to administer it, there is no constitutional objection to vesting discretion as to its execution in the administrators. * * * A statute which in effect reposes an absolute, unregulated, and undefined discretion in an administrative body bestows arbitrary powers and is an unlawful delegation of legislative powers. The presumption that an officer will not act arbitrarily but will exercise sound judgment and good faith cannot sustain a delegation of unregu-

lated discretion." Also, as said in 42 Am. Jur., Public Administrative Law, § 49, p. 353, citing authorities from many states: "The legislature, having declared its policy and purpose and provided standards for the exercise of the power, may confer upon administrative authorities the power to enact rules and regulations to promote the purpose and spirit of the legislation and carry it into effect, and, even though such rules and regulations are given the force and effect of law, there is no violation of the constitutional inhibition against delegation of the legislative function."

Likewise, in Board of Regents v. County of Lancaster, 154 Neb. 398, 48 N. W. 2d 221, this court said: "The exercise of a legislatively-delegated authority to make rules to carry out an expressed legislative purpose, or for the complete operation and enforcement of a law with designated limitations, is not an exclusive legislative power."

Smithberger v. Banning, 129 Neb. 651, 262 N. W. 492, 100 A. L. R. 686, involved the constitutionality of emergency relief measure and companion acts creating a State Assistance Committee and providing for raising of funds to be used for the relief of the unemployed or aged persons, and for other described purposes. Our basis for declaring the unconstitutionality thereof was that the Legislature had delegated legislative authority to the State Assistance Committee and the Board of Educational Lands and Funds in contravention of Article II, section 1, and Article III, section 1, Constitution of Nebraska. In that opinion, after citing and quoting from numerous authorities, this court said: "The above cases have particular application in principle to the case at bar. In the Nebraska acts, there are no limitations, standards, rules of guidance or criterion for the guidance of the state assistance committee and the board of educational lands and funds in allocating funds for old age assistance, unemployment relief, mothers' health, unemployment insurance, and other forms of relief

therein enumerated. There is no requirement that the administrators of the acts find certain facts in determining for which of the various purposes allocations should be made and no basis for determining the amount to be allocated to each or any of the purposes therein set forth. This is all left to the discretion of the state assistance committee. Under the authorities hereinbefore cited, this constitutes a delegation of legislative functions to an administrative board." We have a comparable situation in the case at bar.

In Lennox v. Housing Authority of City of Omaha, 137 Neb. 582, 290 N. W. 451, this court held: "The granting of administrative discretion is not an unconstitutional delegation of a legislative function, where adequate standards to guide the exercise of such discretion are provided for by the statute authorizing it." See, also, Nickel v. School Board of Axtell, 157 Neb. 813, 61 N. W. 2d 566; School District No. 49 v. School District No. 65-R, ante p. 262, 66 N. W. 2d 561.

As stated in People v. Yonker, 351 Ill. 139, 184 N. E. 228: "It is true, as this court has frequently said, the method and manner of enforcing a law must of necessity be left to the reasonable discretion of administrative officers, but an act of the Legislature which vests in such officers the discretion to determine what the law is, or to apply it to one and refuse its application to another in like circumstances, is void as an unwarranted delegation of legislative authority."

Also, as stated in People v. Federal Surety Co., 336 Ill. 472, 168 N. E. 401: "All the legislative power of the State is vested in the General Assembly, and it may not divest itself of its proper functions or delegate its general legislative authority to the discretion of administrative officers so as to give to them the power to determine whether the law shall or shall not be enforced with reference to individuals in the same situation, without fixed rules or limitation for the exercise of such discretion. The legislature cannot delegate arbitrary power

to any executive officer to say that under the same circumstances one rule of law shall apply to one or some individuals and another rule to others."

There are other authorities of like tenor, but they are too numerous to cite here. In that connection, we discover that the authorities relied upon by defendant are generally distinguishable upon the facts and applicable law. We have considered the question of constitutionality in the light of the presumption of validity to which a legislative act is entitled. Nevertheless, we conclude that the last sentence of section 79-307, R. R. S. 1943, contravenes Article II, section 1, and Article III, section 1, Constitution of Nebraska, because such sentence delegates legislative authority to the Superintendent of Public Instruction.

Other questions were presented and argued by briefs filed herein, but as we view it, they require no discussion.

For reasons heretofore set forth, the judgment of the trial court should be and hereby is reversed and the cause is remanded with directions to render judgment for plaintiff in conformity with this opinion. All costs are taxed to defendant.

REVERSED AND REMANDED WITH DIRECTIONS.