STATE OF NEBRASKA, APPELLEE, v. LUIGI GRAYER, APPELLANT.

215 N. W. 2d 859

Filed March 21, 1974. No. 39215.

Thomas P. Kelley, for appellant.

Clarence A. H. Meyer, Attorney General, and Chauncey C. Sheldon, for appellee.

Heard before WHITE, C. J., BOSLAUGH, McCOWN, NEWTON, and CLINTON, JJ., and COLWELL and WARREN, District Judges.

NEWTON, J.

This is a post conviction proceeding. Defendant was 15 years of age at the time of his conviction for first degree murder while perpetrating a robbery. He entered a plea of guilty pursuant to a plea bargain wherein the prosecuting attorney agreed to recommend a life sentence. He contends error was committed in that: (1) Authorizing the county attorney to file charges in either the juvenile or criminal courts, at his discretion, violates the Fourteenth Amendment to the Constitution of the United States, and Article I, section 3, Constitution of Nebraska; (2) without legislative guidelines for the exercise of such discretion there is a violation of Article II, section 1, Constitution of Nebraska; (3) there was an abuse of the prosecutor's discretion in failing to investigate the defendant's background; (4) the guilty plea was invalid because not fully understood by the defendant and because it was obtained by coercion; (5) defendant's counsel was inadequate; and (6) when under 16 years of age, a defendant must be proceeded against in the juvenile court. We affirm the judgment of

the District Court overruling the defendant's motion to vacate and set aside the sentence.

The constitutional questions raised are readily answerable. In DeBacker v. Sigler, 185 Neb. 352, 175 N. W. 2d 912, this court held that vesting in the county attorney a discretionary power to proceed against juveniles in the juvenile or criminal courts was not an unconstitutional practice and did not violate the precepts of due process. The question was before the court in United States v. Bland, 472 F. 2d 1329 (1972), and Cox v. United States, 473 F. 2d 334 (1973). Both cases dealt with a similar discretion vested in the Attorney General of the United States under federal statutes. Both cases hold: "Congress could reasonably vest in Attorney General, rather than in a judge in a judicial proceeding, the responsibility of deciding whether or not to prosecute a juvenile as an adult." Cox v. United States, *supra,* The Bland case specifically states that such discretion does not violate due process.

The two last-mentioned cases also answer defendant's contention that the prosecutor should have investigated more thoroughly. The Bland case states: "While there may be circumstances in which courts would be entitled to review the exercise of prosecutorial discretion as to whether a person should be charged as a juvenile or as an adult, those circumstances would necessarily include the deliberate presence of such factors as race, religion or other arbitrary classification. * * *

"Due process does not require an adversary hearing before the prosecutor can exercise his age-old function of deciding what charge to bring against whom."

The Legislature has defined what acts shall constitute criminal offenses and specified punishments therefor. It has also created juvenile courts and determined who may be subjected to the jurisdiction of a juvenile court. It has not made this jurisdiction exclusive as pertains to minors who have committed crimes. See State v.

McCoy, 145 Neb. 750, 18 N. W. 2d 101. The laws of this state permit the prosecuting attorney to determine whether a felon of tender age shall be prosecuted in the juvenile court or in the District Court as an ordinary offender. The discretion so vested in the prosecuting attorney is akin to that permitting him to determine whether or not to prosecute, what charge should be made, and whether or not to dismiss, apply for immunity, or accept a plea to a lesser offense. All these matters represent necessary and essential decisions of an administrative character which of necessity are determined under varying factual circumstances. To fix reasonable legislative standards for the determination of such matters would be difficult and probably impossible due to the multiplicity of factual situations encountered. This same proposition was raised in People v. Handley, 51 Ill. 2d 229, 282 N. E. 2d 131, cert. den. 409 U. S. 914, 93 S. Ct. 247, 34 L. Ed. 2d 175. It is stated therein: "Historically, the office of the State's Attorney has involved the exercise of a large measure of discretion in the many areas in which State's Attorneys must act in the performance of their duties in the administration of justice. We do not find it constitutionally objectionable that the legislature has seen fit to grant discretion to the State's Attorney in removal matters under the Juvenile Court Act, particularly in view of the fact that the purposes of the Act * * * can be presumed to be considered by State's Attorneys in making determinations in these matters."

The assertion that one under 16 years of age *must* be referred to the juvenile court was answered in Fugate v. Ronin, 167 Neb. 70, 91 N. W. 2d 240, wherein this court held in the case of a 14-year-old defendant that: "A careful study of the act clearly indicates it is not intended the juvenile court shall have exclusive jurisdiction and control of all juveniles. * * * 'Juvenile courts do not have the sole or exclusive jurisdiction of chil-

dren under eighteen years of age who have violated our laws.'" See, also, Kennedy v. Sigler, 397 F. 2d 556 (8th Cir., 1968), which arrives at the same result in a similar case.

In regard to defendant's statement that the plea of guilty was not intelligently and voluntarily made, the record discloses that he was represented by an experienced lawyer who had some doubts as to his guilt and consulted the boy and his parents at length. The defendant persistently insisted that he had committed the murder and, this factor, together with other evidence, convinced defendant's lawyer, and parents that a plea of guilty should be entered as a conviction seemed indicated if the case were tried. The decision to plead guilty was made after a full discussion and explanation to defendant and his parents and appeared to be free of any coercion. The facts do not sustain either defendant's contention that the plea was involuntary or that he was inadequately represented by counsel.

No error appearing, the judgment of the District Court is affirmed.

AFFIRMED.

McCown, J., dissenting.

This court now puts the stamp of constitutional validity upon the unique laws of Nebraska dealing with the institution of proceedings against juvenile offenders. Nebraska law permits each individual county attorney to determine, in each case, without any requirements or standards of any kind to control his discretion, whether a juvenile offender will receive the benefits of the Nebraska Juvenile Court Act, or will be charged and tried in the adult criminal courts.

Nebraska is apparently unique among the states in holding that its Juvenile Court Act was not intended to grant sole or exclusive jurisdiction of juvenile offenders, but instead created concurrent jurisdiction in the juvenile court and the adult criminal courts and

that "the county attorney is not limited by the Juvenile Court Act in any way in his duty to file the proper complaints against wrongdoers and prosecute the same." See, State v. McCoy, 145 Neb. 750, 18 N. W. 2d 101 (1945); Fugate v. Ronin, 167 Neb. 70, 91 N. W. 2d 240. In other states, statutes generally provide for exclusive jurisdiction in the juvenile court with provisions for waiver or transfer of jurisdiction to the adult criminal courts under specified standards or statutory conditions. In some states, statutes spell out the requirements for filing specified proceedings against juveniles in specified courts. In Fugate v. Ronin, *supra,* this court said: "We have examined the cited opinions of other courts dealing with this subject. They are of little use here because they deal with statutes relating to juveniles which are either entirely different than ours or much broader in their scope." The fact that our laws dealing with juveniles may be different than some other states certainly does not change the application of basic constitutional principles.

Even before Gault, the United States Supreme Court held that the determination of whether to transfer a child from the statutory structure of the juvenile court to the criminal processes of the adult courts is a "critically important" proceeding; that it must satisfy the basic requirements of due process and fairness; and that it is incumbent upon the juvenile court, after hearing, to accompany its waiver order with a statement of the reasons or considerations therefor. See Kent v. United States, 383 U. S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84. In Kent the statute placed exclusive jurisdiction in the juvenile court with provisions for a waiver to the criminal courts by the juvenile court after full investigation.

Of major interest on the issues involved here is the policy memorandum embodied in the appendix to the opinion of the court in Kent. The policy memorandum

states that the waiver statute provided no specific standards for the exercise of the important discretionary act of waiving jurisdiction from the juvenile to adult courts but left the formulation of such criteria to the juvenile judge. The memorandum then states: "An offense falling within the statutory limitations will be waived if it has prosecutive merit and if it is heinous or of an aggravated character, or—even though less serious—if it represents a pattern of repeated offenses which indicate that the juvenile may be beyond rehabilitation under Juvenile Court procedures, or if the public needs the protection afforded by such action." The policy memorandum then sets out a list of eight specific determinative factors which are to be considered by the juvenile judge in deciding whether the juvenile court's jurisdiction over an offense will be waived.

It is incomprehensible that the "critically important" decision as to which court will have jurisdiction over a juvenile offender should be surrounded with constitutional safeguards when the decision is made by a juvenile court as in Kent, but be completely free of constitutional restrictions if the same decision is made by any one of some 93 county attorneys, as in Nebraska. Where the decision as to what actions and which juvenile offenders shall be tried in the juvenile courts and which shall be tried in the adult criminal court is left to the uncontrolled discretion of each county attorney in this state, without any guidelines or standards for the exercise of such discretion, the possibility, indeed the probability, of arbitrary and discriminatory action is clearly apparent. The Nebraska juvenile court framework validates the "critically important" decision, whether it is made without any standards, or under any individual set of standards adopted or used by any of the 93 county attorneys of this state. Statutes permitting and sanctioning such arbitrary action in the case of juvenile offenders violate the principles of equal pro-

tection, as well as due process of law, under both the federal and state Constitutions. See Schornhorst, "The Waiver of Juvenile Court: Kent Revisited," 42 Ind. L. J. 583.

It is undisputed that the Legislature has the exclusive power to establish a juvenile court system and to determine the nature and extent of its jurisdiction in all cases. It is also undisputed that the Legislature may delegate the power to determine the jurisdictional matters involved here, provided appropriate standards are established to guide the exercise of that discretion. Currently no standards of any sort have been established by the Legislature. Where no standards are set and no record required, there is also no basis for judicial review of the "critically important" decision. There is currently pending in the Legislature a bill to establish such standards. We shall not comment upon the specific provisions of that bill nor indicate any opinion as to the advisability of the specific limitations and standards set out. Nevertheless, the Legislature now recognizes that the determination of whether the Juvenile Court Act shall or shall not be applied to juvenile offenders is a legislative function and if delegated, the power must be exercised within limits and under standards set by the Legislature. To date, the Nebraska Legislature has left it to each county attorney to decide when and under what circumstances the Nebraska Juvenile Court Act will be given effect, and which juvenile offenders will be subject to its jurisdiction and which will not.

This court has repeatedly reaffirmed the fundamental principle of our system of government that the rights of men are to be determined by the law itself and not by the let or leave of administrative officers. A child's rights should be determined under the same constitutional standards. A statute which in effect reposes an absolute, unregulated, and undefined discretion in an

administrative officer or body bestows arbitrary power and is an unlawful delegation of legislative power. The presumption that an officer will not act arbitrarily but will exercise sound judgment and good faith cannot sustain a delegation of unregulated discretion. See School Dist. No. 39 v. Decker, 159 Neb. 693, 68 N. W. 2d 354.

In the Decker case this court held that a statute which delegated to the Superintendent of Public Instruction the right to approve high schools for free high school tuition purposes was unconstitutional because there were no legislative limitations or standards. As this court stated: "* * * it would have been a simple matter for the Legislature, which had the power and authority, to have incorporated limits and standards in the statute. As a consequence, without questioning the motives or ability of the Superintendent of Public Instruction, there might well be approval of some high schools upon one standard and a withholding of approval from others by a qualification of such standard or by virtue of another. Thus, defendant had arbitrary power over the life or death of all high schools in this state * * *."

In the Decker case, this court quoted with approval the following language: "It is true, as this court has frequently said, the method and manner of enforcing a law must of necessity be left to the reasonable discretion of administrative officers, but an act of the Legislature which vests in such officers the discretion to determine what the law is, or to apply it to one and refuse its application to another in like circumstances, is void as an unwarranted delegation of legislative authority." People v. Yonker, 351 Ill. 139, 184 N. E. 228.

"All the legislative power of the State is vested in the General Assembly, and it may not divest itself of its proper functions or delegate its general legislative authority to the discretion of administrative officers so as to give to them the power to determine whether the law shall or shall not be enforced with reference to

individuals in the same situation, without fixed rules or limitation for the exercise of such discretion. The legislature cannot delegate arbitrary power to any executive officer to say that under the same circumstances one rule of law shall apply to one or some individuals and another rule to others." People v. Federal Surety Co., 336 Ill. 472, 168 N. E. 401. See, also, Yakus v. United States, 321 U. S. 414, 64 S. Ct. 660, 88 L. Ed. 834; American Power & Light Co. v. Securities & Exchange Commission, 329 U. S. 90, 67 S. Ct. 133, 91 L. Ed. 103; Furman v. Georgia, 408 U. S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346.

Under the current Nebraska juvenile court framework, the 93 county attorneys in this state, as a result of legislative silence, have been vested with unrestricted and unlimited power to determine whether the Nebraska Juvenile Court Act shall or shall not be applied, and whether it will be applied to one or to some juveniles but withheld as to others in like circumstances. The exercise of that power is clearly the exercise of legislative power since it determines in effect the nature and the extent of jurisdiction under the Nebraska Juvenile Court Act. The delegation of such arbitrary discretionary power without any standards to guide its application and without any indications of the purpose or the boundaries of the delegation is clearly an unconstitutional delegation of legislative power and authority in violation of Article II, section 1, and Article III, section 1, of the Constitution of Nebraska.

The majority holding here validates the denial of the benefits of the Juvenile Court Act to any child offender for any reason, or for no reason, at the discretion of 93 individual county prosecutors. Not only has the Legislature delegated that legislative power by its silence, but it has done so without delineating the policy to be followed nor the method of application, nor even the most rudimentary standards for its exercise. Constitu-

tional principles ought to be applied with an equal hand, whether the persons affected are adults or children.