SCHOOL DISTRICT No. 228 OF HOLT COUNTY, NEBRASKA, APPELLANT, v. THE STATE BOARD OF EDUCATION, A BODY CORPORATE, ET AL., APPELLEES.

82 N. W. 2d 8

Filed March 29, 1957. No. 34131.

*Davis, Healey, Davies & Wilson, Robert A. Barlow,* and *Leo F. Clinch,* for appellant.

*Clarence S. Beck,* Attorney General, and *Gerald S. Vitamvas,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

Plaintiff, and appellant here, is a school district in Holt County. The appellees are the State Board of Education and the Commissioner of Education. Directly, the State Board of Education is involved. We refer to it hereinafter as the defendant.

Plaintiff sought to enjoin the defendant from enforcing a ruling of nonapproval of the high school of plaintiff. The effect of the ruling was to deny high school tuition advantages to plaintiff. Plaintiff's school was also classed as a nonoperative high school. Issues were made and trial was had resulting in a judgment of dismissal of plaintiff's cause of action. Plaintiff appeals. We reverse the judgment of the trial court and remand the cause with directions.

Plaintiff operates a 10-grade school at Amelia. The ninth and tenth grades, as a 2-year high school, only are involved.

On March 1, 1956, defendant notified the plaintiff that its high school operations would not be approved for the collection of free high school tuition and would not be exempt from the free high school tuition levy for the school year 1956-1957.

The nonapproval rested on the ground of an extremely limited high school program and inadequacy of facilities.

Section 79-328(5), R. S. Supp., 1955, provides in part that the State Board of Education shall have the power to "establish standards and procedures for classifying, approving, and accrediting schools, including the establishment of minimum standards and procedures for approving the opening of new schools, the continued legal operation of all schools, and for the approval of high schools for the collection of free high school tuition money, * * *." Plaintiff challenged the constitutionality of a part of that act. The challenge rests upon our decision in School District No. 39 v. Decker, 159 Neb. 693, 68 N. W. 2d 354.

The defendant did establish criteria for approved Public Schools to be effective January 1, 1956. However, filing with the Secretary of State did not occur until June 22, 1956, almost 4 months after the letter of March 1, 1956, was written to plaintiff.

The plaintiff argues here that under the provisions of sections 84-901 to 84-906, R. R. S. 1943, these criteria are not binding upon it in any event insofar as this case is concerned. The defendant does not contend otherwise and accordingly suggests that the constitutional question is not here for determination.

The second ground for the position taken by the defendant in the notice to the plaintiff is bottomed on the provisions of section 79-701(5), R. S. Supp., 1955, which provides in part: "If for three consecutive years the enrollment of an existing Class II district shall be * * * less than ten pupils in the case of a district maintaining a two-year high school, such district shall not continue to operate * * * if such two-year high school shall be within fifteen miles on a reasonably improved highway of any high school."

It is on the above statute that defendant bases the contention that plaintiff is a nonoperative school and not entitled to free high school tuition benefits under section 79-4,103, R. R. S. 1943.

It is conceded that plaintiff is a Class II school district

and that its enrollment is less than 10 pupils in the high school grades.

The question which we are asked to decide requires the construction of the provision which is that the district shall not continue to operate if it is "within fifteen miles on a reasonably improved highway of any high school."

The nearest high school to Amelia is at Chambers. There are two roads between Amelia and Chambers. One road is to go west from Amelia along an improved road, formerly a part of the state highway system, then south, and then east along an improved state highway. That distance is about 17 miles. The other is to go east from Amelia a half mile, thence south 2 miles, and thence east to Chambers on the state highway. This distance is about 11 miles. In miles the second road is within the 15-mile requirement of the statute. The question is: Is it a "reasonably improved highway"?

Section 79-701, R. S. Supp., 1955, was introduced in the 1953 Legislature as LB 313 as an amendment to section 79-701, R. R. S. 1943. So far as material here, as introduced it provided "that no existing Class II district shall continue to operate if the high school enrollment in that district is * * * less than twelve pupils in districts maintaining a two-year high school."

The Education Committee reported the bill with an amendment providing that "if, for three consecutive years the enrollment of an existing Class II district shall be * * * less than ten pupils in the case of a district maintaining a two-year high school, such district shall not continue to operate * * * if such two-year high school shall be within fifteen miles of any high school." Nebraska Legislative Journal, 1953, p. 645.

The Education Committee, in its statement to the Legislature, said: "The bill is also amended so that no such district would be closed unless there was a high school within a 15 mile radius."

When the bill was considered on General File the

words "on a reasonably improved highway" were inserted following the words "fifteen miles." Nebraska Legislative Journal, 1953, p. 771.

This review of the history of the bill demonstrates a consistent purpose of the Legislature to relax the terms of the bill as proposed as to number of pupils enrolled, the period of time calculated as to the enrollment, the distance between schools, and finally as to the quality of the highway or highways involved in calculating distances. It evidences a legislative intent to protect the small enrollment high school and pupils from the results that would follow from the application of the strict provisions of the bill as originally introduced.

This brings us to a construction of the clause "a reasonably improved highway." Here the Legislature used words of common usage and understanding to express its intent. As was said by the Supreme Court of the United States in Sproles v. Binford, 286 U. S. 374, 52 S. Ct. 581, 76 L. Ed. 1167: "The use of common experience as a glossary is necessary to meet the practical demands of legislation."

The books give us little help in reaching an answer to the meaning of the clause. Here we must draw upon common experience in reaching an understanding of the terms used.

We have expressed the rule as follows: "In the construction of a statute, effect must be given, if possible, to all of its several parts. No sentence, clause, or word should be rejected as meaningless or superfluous, if it can be avoided; but the subject of the enactment and the language employed, in its plain, ordinary, and popular sense, should be taken into account, in order to determine the legislative will." Nacke v. City of Hebron, 155 Neb. 739, 53 N. W. 2d 564.

The word "highway" is one of variable meaning. We think it clear that the Legislature did not use the word in the sense of a highway designated as a part of the state highway system as defined in section 39-1302, R.

S. Supp., 1955. To so construe it would be to restrict its obvious meaning as used here.

The Legislature in section 39-226, R. S. Supp., 1955, provided that primary county roads shall include direct highways leading to and from rural schools where 10 or more grades are being taught. There the words highway and road are used somewhat interchangeably.

As here used, we think the word highway means a public road of general use by the public in travel from place to place. In fact the Legislature in section 39-210, R. R. S. 1943, uses the term highway in reference to graveling of a highway which connects any unincorporated village with a paved or graveled state or county highway. The road here involved fits that description. When "passable" it is of general use by the public. We conclude that the shorter road involved here is a highway within the meaning of section 79-701(5), R. S. Supp., 1955.

This brings us to the construction of the word "improved" which qualifies "highway" in the act. We think it is used here in the sense of being made better for travel by human effort.

This includes one or more of the elements of grading, elevating or lowering a roadbed, surfacing, drainage, and like betterments. The extent of the improvement required is indicated by the qualifying word "reasonably."

We think the word reasonably is here used in the sense of sufficiently. That is, the highway must be improved sufficiently to meet the normal demands put upon its use by children of school age required to attend school regularly. An element to be considered in this determination is the use of the automobile by school children as a common means of transportation. The Legislature has recognized that fact. It has provided in section 60-407(2), R. S. Supp., 1955, for probationary operator's licenses to minors between the ages of 16 and 20 years. In section 60-407(3) the Legislature has provided that a

minor over the age of 14 years (with certain exceptions) may be issued a limited permit to drive a motor vehicle to and from the school building where he attends school if he lives a distance of 1½ miles or more from such school.

The issues here relate themselves to the road east from Amelia one-half mile, thence south 2 miles to where it connects with the state highway. The land over which this road passes is over a water basin where flowing wells are common. The water table is near the surface. The soil is a light sand-powder, as described by one witness. It blows readily with the wind. The building and maintenance of improved roads under these conditions require grading and elevating of a roadbed, then covering its surface with clay, and then placing on top of that gravel or other hard surface material.

For the first half mile east of Amelia and a short distance to the south, the road had been graded and elevated recently preparatory to surfacing with clay and gravel. A county supervisor testified that he expected to get clay and gravel for and to put it on that portion of the road, and that without it the life of the grade would be about 90 days, the reason being that the uncovered sand in the grade would blow away in about that time.

At the south end of the north-and-south 2 miles is a short length of road about which no particular complaint is made. In between these two sections of the road on the north-and-south portion is a strip of road from 1 mile to 1½ miles in length that must meet the test of being a reasonably improved highway if the decision of the trial court is to be sustained.

This traveled portion of the road is described, without dispute, as being from 1 to 6 feet below the surface of the land on either side. Witnesses refer to it as a channel where the traveler is expected to move along the lowest part of the road. The reasonable inference is that this depressed roadbed has resulted from the light sand being blown away.

There is no evidence that any effort has ever been made to improve that part of the road. It affirmatively appears that for 15 years last past it has never been re-graded or reshaped. It further affirmatively appears that the county is without funds to do it and has no present intention of improving this section of the road.

It further appears, without dispute, that this section of road, being below the surrounding land, fills readily with snow, blocking its use more quickly than an ele-vated road, and making snow removal more difficult. It is a road that the officials deem of secondary import-ance in removing snow when snow blocks occur.

It further appears that when the frost goes out of the road in the spring that this section has "no bottom" and its use by automobiles is impossible as a result on those occasions.

The road is without adequate drainage. In times of heavy rainfall water flows into the road from the sur-rounding land and has no outlet save when it rises above the level of the surrounding land. One witness testified that under those conditions the road has been impassable to automobiles for periods of from 1 hour to 3 days at a time.

Several witnesses testified that the total number of days in a year when the road would be impassable would be from 10 days to 3 weeks or more. No witness testified that it is more than a "passable" road at any time.

Other witnesses testified that during the time the road is impassable for any of the above reasons that it has been necessary either to use the longer road or to take children to school by the use of a tractor, driving out in the fields, sending them by horseback, or having them walk.

We find no fact basis in this record to support a find-ing that this length of road is a reasonably improved highway within the legislative intent. In fact it is not an improved highway in any sense. Man's use and na-

ture's forces have worsened instead of bettered it for travel.

The order of the defendant holding that plaintiff's high school is a nonoperative school is without statutory authority under section 79-701, R. S. Supp., 1955. The defendant here rests the validity of its order and the judgment of the trial court on that provision.

· Accordingly the judgment of the trial court is reversed and the cause remanded with directions to render a decree in accord with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.